UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

STEADY STATE IMAGING, LLC,

                                                  Civil No. 17-1048 (JRT/KMM)

                Plaintiff,

v.                                   **MEMORANDUM OPINION
                                              AND ORDER ADOPTING**
GENERAL ELECTRIC COMPANY,     **REPORT & RECOMMENDATION**

                Defendant.

Devan V. Padmanabhan, Lisa B. Ellingson, and Paul J. Robbennolt, **WINTHROP & WEINSTINE, PA**, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, for plaintiff.

Marla R. Butler, **ROBINS KAPLAN LLP**, 800 LaSalle Avenue, Suite 2800, Minneapolis, MN 55402, for defendant.

This diversity action arises out of an asset purchase by Defendant General Electric Company ("GE") from Plaintiff Steady State Imaging, LLC ("SSI"), whose primary business involved technology that SSI licensed from the University of Minnesota ("U of M"), the original developer. SSI alleges that GE breached certain provisions of the asset-purchase agreement. SSI also asserts claims for breach of the implied covenant of good faith and fair dealing, breach of post-agreement contracts, and promissory estoppel. GE moved to dismiss all of SSI claims except the breach-of-contract claim related to the asset-purchase agreement.

United States Magistrate Judge Katherine Menendez issued a Report and Recommendation ("R&R") in which she recommended that GE's motion be granted in

part and that SSI's claim for breach of the implied covenant of good faith and fair dealing be dismissed.  SSI filed objections to the R&R.  After a de novo review, the Court will overrule SSI's objections and adopt the R&R because SSI has failed to state a claim for breach of the implied covenant of good faith and fair dealing.  Accordingly, the Court will dismiss that claim from SSI's complaint.

## BACKGROUND

The U of M developed a new technique for magnetic resonance imaging ("MRI") called "Sweep Imaging with Fourier Transform" ("SWIFT").  (Am. Compl. ¶¶ 6, 11, May 19, 2017, Docket No. 22.)  The U of M owns numerous patents and patent applications related to SWIFT.  (*Id.* ¶ 12.)

In 2006, the U of M and SSI entered into an Exclusive Patent License Agreement ("PLA") in which SSI licensed from the U of M the SWIFT-related patents, patent applications, and related intellectual property.  (*Id.* ¶ 16.)  The PLA requires SSI to commercialize SWIFT.  Specifically, SSI must "use its commercially reasonable efforts, consistent with sound and reasonable business practices and judgment, to commercialize [SWIFT] as soon as practicable and to maximize sales thereof."  (*Id.* ¶ 19.)

In 2011 GE entered into an Asset Purchase Agreement ("APA") with SSI in which GE acquired substantially all of SSI's assets.  (*Id.* ¶ 21.)  Unlike SSI's agreement with the U of M, the APA does not require GE to commercialize SWIFT.  It does, however, require GE to create an "ATD Program" – which is "an investigative research and development program whose purpose is to evaluate the clinical and technical feasibility

of a particular technology" – and potentially also an "NPI Program," which is "a business program for pursuing the launch of a new commercial product." (*Id.* ¶¶ 24-25.) Paragraph 2.2(a)(iv)(D) of the APA provides:

> [GE] shall have no obligation to pursue the commercialization of [SWIFT] or use any specific level of efforts if [GE] chooses to commercialize [SWIFT]. Notwithstanding the preceding sentence, (1) following the Closing, [GE] shall create, in accordance with its standard policies and procedures, an ATD Program with respect to the SWIFT Technology and (2) if, following the completion of the ATD Program, [GE] determines in its sole discretion that an NPI Program is appropriate for any product using the SWIFT Technology, [GE] shall create, in accordance with its standard policies and procedures, an NPI Program with respect to such product.

(Sealed Ex. 2 ("APA") at 11, ¶ 2.2(a)(iv)(D), June 2, 2017, Docket No. 28.) The APA also requires GE to pay SSI per-unit royalties on any MRI scanners sold by GE that incorporate the SWIFT technology. (Am. Compl. ¶ 26; APA at 9-10, ¶ 2.2(a)(i)-(iv).)

The APA includes a document titled "Instrument of Assumption." (APA at 170.) In it, GE assumed all of SSI's rights and liabilities under SSI's PLA with the U of M. (*Id.*; *see also* Am. Compl. ¶ 22.)[1] The Instrument of Assumption states, however, that "[i]n the event that any provision of this Instrument of Assumption conflicts with, or is inconsistent with, any provision of the [APA], the provisions of the [APA] shall control." (APA at 170.)

---

[1] Section 1.1(d) of the APA includes among the acquired assets SSI's contracts whose rights GE acquired. (APA at 6.) And Schedule 1.1(d) of the APA includes among those contracts SSI's PLA with the U of M. (*See id.* at 89.)

SSI brought this action against GE, alleging that GE breached the APA by failing to create an ATD Program, not commercializing SWIFT, and prioritizing its own "Silent Scan" technology over SWIFT.  (Am. Compl. ¶¶ 27-29.)  SSI alleges that GE had "ulterior motives" for failing to commercialize SWIFT:  namely, to avoid making royalty payments to SSI.  (*Id.* ¶¶ 32-34.)  SSI also alleges that, after the asset purchase, GE promised SSI that it would commercialize SWIFT.  (*Id.* ¶¶ 35-40.)  SSI asserts claims for breach of contract (Counts I and III), breach of the implied covenant of good faith and fair dealing (Count II), and promissory estoppel (Count IV).  (*Id.* ¶¶ 41-63.)

GE moved to dismiss all of SSI's claims except the claim for breach of the APA. (Def.'s Renewed Partial Mot. to Dismiss, June 2, 2017, Docket No. 24.)  The Magistrate Judge recommended that GE's motion be granted in part:  that SSI's claim for breach of the implied covenant of good faith and fair dealing (Count II) be dismissed, but that SSI's remaining claims not be dismissed.  (R&R at 24, Nov. 2, 2017, Docket No. 85.)  SSI filed objections to the R&R; GE did not.  (Pl.'s Objs., Nov. 16, 2017, Docket No. 92.)

Because SSI's claim for breach of the implied covenant of good faith and fair dealing is merely an attempt to create an obligation where none exists, it fails to state a claim on which relief may be granted.  Accordingly, the Court will overrule SSI's objection, adopt the R&R, and dismiss that claim.

**DISCUSSION**

**I.   STANDARD OF REVIEW**

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

In reviewing a motion to dismiss brought under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a claim for "relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## II. GE'S MOTION TO DISMISS

### A. Count II – Breach of Implied Covenant of Good Faith and Fair Dealing

Although Minnesota recognizes an implied covenant of good faith and fair dealing inherent in every contract, *In re Wren*, 699 N.W.2d 758, 765 n.10 (Minn. 2005), that implied covenant cannot be used to create obligations where none exist, *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 503 (Minn. 1995). To survive GE's motion to dismiss, SSI must allege "sufficient facts which, if proven, would support an inference of bad faith." *See White Stone Partners, LP v. Piper Jaffray Cos.*, 978 F. Supp. 878, 885 (D. Minn. 1997).

SSI alleges that GE breached the implied covenant of good faith and fair dealing, first, "by failing to use its commercially reasonable efforts to commercialize the SWIFT Technology," and second, "by failing to exercise its discretion to determine whether an NPI Program was warranted with respect to the SWIFT Technology in a reasonable manner." (Am. Compl. ¶¶ 49-50.)[2] GE moves to dismiss Count II, arguing that the plain language of the APA imposes no such duty to commercialize the SWIFT Technology and that GE retains sole discretion in deciding whether to develop an NPI Program.

---

[2] In the section of the Amended Complaint titled "Count II," SSI does not allege that GE breached the implied covenant of good faith and fair dealing when GE failed to create an ATD Program. (*See* Am. Compl. ¶¶ 49-50.) But SSI alleges earlier in the Amended Complaint that GE failed to create an ATD program in bad faith by favoring its Silent Scan technology over SWIFT to avoid paying SSI royalties. (*Id.* ¶¶ 33-34.) Nevertheless, those facts do not plausibly support an inference of bad faith. (R&R at 14-15 (citing *Sterling Cap. Advisors, Inc. v. Herzog*, 575 N.W.2d 121 (Minn. Ct. App. 1998), and *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728 (8th Cir. 2003)).)

### 1. Duty to Commercialize

The first component of SSI's claim for breach of the implied covenant of good faith and fair dealing is that GE failed to use commercially reasonable efforts to commercialize SWIFT.

Paragraph 2.2(a)(iv)(D) of the APA provides that GE "shall have no obligation to pursue the commercialization of [SWIFT] or use any specific level of efforts if [GE] chooses to commercialize [SWIFT]." (APA ¶ 2.2(a)(iv)(D).) This provision imposes neither an obligation on GE to pursue commercialization nor an obligation to "use any specific level of efforts" if GE ultimately chooses to pursue commercialization. (*Id.*) GE therefore has no obligation under the APA to commercialize or to use reasonable efforts to commercialize SWIFT. SSI cannot use the implied covenant of good faith and fair dealing to impose such an obligation on GE. *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d at 503.

SSI argues that the APA's requirement that GE create an ATD Program for SWIFT "imposes a duty on GE to investigate the commercial viability of SWIFT in good faith." (Obj. at 11.) Not so. The APA simply requires that GE create an ATD Program in accordance with its standard policies and procedures. GE has not moved to dismiss SSI's claim for breach of the APA, and SSI does not allege that GE breached the implied covenant of good faith and fair dealing by failing to create an ATD Program.

Moreover, the specific provision of the APA requiring GE to create an ATD Program for SWIFT is an exception to the general provision that precedes it: that GE has no obligation to pursue commercialization of SWIFT. The Court will not construe the

-7-

narrow and specific obligation on GE to create an ATD Program as an obligation to use commercially reasonable efforts to commercialize SWIFT in direct contradiction to the general provision that GE has no obligation to pursue SWIFT commercialization.  The language of a contract must be read as a whole and in a manner that gives meaning to all of its provisions.  *Brookfield Trade Ctr., Inc. v. Cty. of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998).

SSI also argues that the PLA – which was an agreement between SSI and the U of M – requires GE to use commercially reasonable efforts to commercialize the SWIFT Technology.  It is true that SSI agreed with the U of M that SSI would use such efforts.  It is also true that GE, in the APA, assumed SSI's obligations under the PLA – but only to the extent that the APA and PLA do not conflict.  The APA expressly provides that its terms control over any conflicting terms in the PLA.  The explicit statement in the APA that GE has no obligation to commercialize SWIFT conflicts with, and therefore controls, the PLA's requirement that SSI use commercially reasonable efforts to commercialize SWIFT.  Put another way, GE did not assume SSI's obligation to the U of M to use commercially reasonable efforts to commercialize the SWIFT technology.  Thus, to the extent that SSI alleges that GE's failure to use commercially reasonable efforts to commercialize SWIFT constitutes a breach of the implied covenant of good faith and fair dealing, SSI fails to state a claim on which relief may be granted.[3]

---

[3] The "U of M Confirmation Letter" that SSI and GE agreed to send to the U of M – which simply reflects what two contracting parties agreed to tell a third party – neither creates
*(footnote continued on next page)*

## 2. The NPI Program

The second component of SSI's claim for breach of the implied covenant of good faith and fair dealing is that GE, in bad faith, failed to exercise its discretion to determine whether an NPI Program was warranted with respect to the SWIFT technology. "[T]he parties' real disagreement here is whether GE's alleged subjective motivation to avoid royalty payments amounts to bad faith." (R&R at 14.)

Paragraph 2.2(a)(iv)(D) of the APA provides that "if, following the completion of the ATD Program, [GE] determines in its sole discretion that an NPI Program is appropriate for any product using the SWIFT Technology, [GE] shall create, in accordance with its standard policies and procedures, an NPI Program with respect to such product." (APA at 11, ¶ 2.2(a)(iv)(D).) GE's determination of whether to develop an NPI Program is expressly in "its sole discretion." (*Id.*)

Even if GE's decision not to develop an NPI Program was an abuse of discretion or objectively unreasonable, GE's decision – exercised in its sole discretion – does not constitute a breach of the implied covenant of good faith and fair dealing. *BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 968 (D. Minn. 2007). And even if GE's subjective motivation in not developing an NPI Program was to avoid making royalty payments to SSI and to favor GE's own Silent Scan technology, such a motivation does not amount to bad faith. *Sterling Cap. Advisors, Inc. v. Herzog*, 575

---

any additional substantive obligations for SSI or GE, nor can overcome the plain language of the APA:  that GE has no obligation to commercialize the SWIFT technology. (*See* APA at 13, ¶ 3.4(c); *id.* at 14, ¶ 3.5(h); *id.* at 85-86, Ex. I.)

N.W.2d 121, 123-25 (Minn. Ct. App. 1998); *see Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 730-33 (8th Cir. 2003) (applying Arkansas law). "Had SSI wanted to limit GE's exercise of discretion to prohibit it from acting in a self-serving way, it could have negotiated language that would have imposed such a constraint." (R&R at 17.) Because GE's exercise of its sole discretion is GE's contractual right, GE's subjective motivation for doing so cannot constitute an ulterior motive sufficient to survive a motion to dismiss unless an implied covenant of good faith must be applied to prevent the APA from being held illusory. *See White Stone*, 978 F. Supp. at 882. Thus, to the extent that SSI alleges a breach of the implied covenant of good faith and fair dealing because GE acted in bad faith with regard to whether an NPI Program was warranted, SSI fails to state a claim on which relief may be granted.

Because Count II of the amended complaint fails to state a claim on which relief may be granted, the Court will overrule SSI's objection, adopt this portion of the R&R, and grant GE's motion to dismiss Count II of the amended complaint.[4]

### B.     Counts III and IV

The Magistrate Judge recommended denying GE's motion with respect to Counts III and IV of the amended complaint. (R&R at 19-24.) Neither SSI nor GE filed any objections to that portion of the R&R, and the Magistrate Judge did not clearly err in so

---

[4] The Magistrate Judge found that leave for SSI to amend would be futile. (R&R at 18-19.) SSI does not object to this portion of the R&R, and the Magistrate Judge did not clearly err in so finding. The Court will therefore deny SSI leave to amend.

recommending. The Court will therefore adopt that portion of the R&R and deny GE's motion to dismiss Counts III and IV of the amended complaint.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Objections [Docket No. 92] are **OVERRULED**, the Report and Recommendation of the Magistrate Judge [Docket No. 85] is **ADOPTED**, and Defendant's Renewed Partial Motion to Dismiss [Docket No. 24] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. With respect to Plaintiff's claim for breach of the implied covenant of good faith and fair dealing asserted in Count II of the Amended Complaint [Docket No. 22], Defendant's motion is **GRANTED**. Count II of the Amended Complaint [Docket No. 22] is **DISMISSED with prejudice**.

2. In all other respects, Defendant's motion is **DENIED**.

DATED: January 17, 2018                  _____s/John R. Tunheim_____
at Minneapolis, Minnesota.                 JOHN R. TUNHEIM
                                                          Chief Judge
                                            United States District Court