## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Steady State Imaging, LLC,

           Plaintiff,

Vs.

General Electric Company,

           Defendant.

)
)
)
)
)
)
)
)
)
)
)

Case No 0:17-cv-01048 JRT-KMM

**PLAINTIFF STEADY STATE IMAGING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE EVIDENCE NOT DISCLOSED IN RESPONSE TO INTERROGATORIES**

At the very outset of this case, Defendant General Electric Company ("GE") filed a partial motion to dismiss the complaint of Plaintiff Steady State Imaging, LLC ("SSI") and secured a stay of its deadline to answer the complaint while that motion was pending. Given the relatively short discovery period in this case—approximately 9 months—SSI was concerned that it would not learn GE's defenses in time to conduct discovery and prepare its case. Accordingly, SSI served interrogatories asking GE to provide detailed information regarding its contention that it was not liable for breach of contract. In response to those interrogatories, GE made general denials of SSI's breach of contract claims.

On January 31, 2018, GE filed its answer to SSI's amended complaint. On that date—approximately two weeks before the close of discovery—SSI learned for the first time that, in response to SSI's breach of contract claims, GE intended to assert 22 affirmative defenses (in 12 separate numbered paragraphs) to SSI's breach of contract claims that GE had not disclosed in any way in response to SSI's interrogatories. GE's

failure to disclose those defenses and the basis therefor severely prejudiced SSI's ability to conduct discovery and prepare its case. Although GE listed its defenses in its answer, it did not provide any of the substantive information SSI requested in its interrogatories: the facts and documents that support GE's defenses, and the witnesses with relevant knowledge. SSI could not even take discovery based on GE's conclusory statements in its answer: SSI had already taken the depositions of seven witnesses and therefore missed the opportunity to question them regarding GE's defenses. Further, because only two weeks of discovery remained, SSI could not notice any further depositions or conduct any additional document discovery.

There is no excuse for GE's failure to identify its defenses, and provide the legal and factual basis therefor, during discovery. GE does not argue, because it cannot, that it did not know its defenses or the legal and factual basis for them during discovery. The stay of GE's deadline to answer does not relieve it of any obligation to respond fully to SSI's interrogatories. In fact, the stay of GE's deadline to answer only makes its responses to SSI's interrogatories more critical—they are the only means by which SSI could learn about GE's defenses.

GE's failure to provide information on its defenses in response to interrogatories during discovery has consequences. Under Rule 37(c), GE cannot use that information at trial or on a motion, unless its failure was substantially justified or harmless. GE's failure was neither. Accordingly, this court should bar GE pursuant to Rule 37(c) from presenting evidence at trial or on any motion to support its affirmative defenses to SSI's breach of contract claims.

# I. RELIEF SOUGHT

SSI seeks through this motion relief arising out of GE's failure to provide, during the discovery period and in a timely manner, information responsive to SSI's Interrogatory Nos. 2, 3, 6, and 7. Accordingly, SSI requests an Order barring GE, pursuant to Fed. R. Civ. P. 37(c)(1), from presenting at trial or on any motion the following evidence:

1. Any evidence in support of the 22 affirmative defenses to SSI's breach of contract claims (Counts 1 and 3) set forth in GE's Affirmative Defense Paragraphs 3-7, 10, 13-17, and 19 (these were requested in Interrogatory Nos. 2 and 3). The specific defenses at issue are as follows:

| Paragraph | Defenses |
| --- | --- |
| Third | Estoppel<br>Waiver<br>Acquiescence<br>Laches |
| Fourth | Statute of Frauds |
| Fifth | Statute of Limitations |
| Sixth | Barred by express terms of the agreements |
| Seventh | Impracticability<br>Impossibility of Performance<br>Frustration of Purpose |
| Tenth | Failure to provide proper notice of breach |
| Thirteenth | Failure of consideration<br>Failure of performance |

| Fourteenth | Promises are unenforceable |
| | Promises are void |
| | Promises are indefinite |
| Fifteenth | Absence of writing |
| | Absence of clear and definite promise |
| | Absence of essential terms |
| Sixteenth | Lack of authority, both actual and apparent |
| Seventeenth | Failure to fulfill a condition precedent |
| Nineteenth | Not an enforceable contract, barred due to defects fatal to contract formation |

2. Any evidence concerning GE's policies and procedures for its ATD programs that was set forth in GE's February 16, 2018, supplemental response to Interrogatory No. 6. *See* Exhibit D to the March 27, 2018, Declaration of Paul J. Robbennolt ("Robbennolt Dec.") at 26-27.

3. Any evidence concerning GE's ATD program on quiet imaging that was set forth in GE's February 16, 2018 supplemental response to Interrogatory No. 7. *See* Robbennolt Dec. Ex. D at 30-33.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. <u>SSI Asserted Two Breach of Contract Claims in its Complaint and Amended Complaint</u>

SSI commenced this action by filing its complaint against GE on April 4, 2017.

Dkt. No. 1. After GE filed a partial motion to dismiss, *see* Dkt. No. 13, SSI filed its

amended complaint on May 19, 2017. Dkt. No. 22. Both the complaint and the amended

complaint set forth two claims for breach of contract. Count I alleged that GE breached

the parties' Asset Purchase Agreement (the "APA") by, in relevant part, failing to create

an "Advanced Technology Development" (ATD) program with respect to the "SWIFT" MRI technology that lies at the heart of this lawsuit. *See* Complaint at 8 (Dkt. No. 1); Amended Complaint at 8-9 (Dkt. No. 22). Count III alleged that GE breached a post-APA contract between the parties pursuant to which GE agreed to commercialize the SWIFT technology. *See* Complaint at 9 (Dkt. No. 1); Amended Complaint at 10 (Dkt. No. 22). SSI described in its amended complaint one such post-APA agreement, alleging that, in September 2014, Jason Polzin and Baldev Ahluwalia of GE promised Danny Cunagin of SSI that GE would commercialize the SWIFT technology; in exchange, SSI made investments to assist with that commercialization and refrained from taking action to enforce the APA. Amended Complaint at ¶¶ 37-38 (Dkt. No. 22).[1]

### B. GE Sought and Received a Stay of its Deadline to Answer the Amended Complaint Pending Resolution of its Partial Motion to Dismiss

GE moved to dismiss counts II-IV of the amended complaint. Dkt. No. 24. In its motion, it sought and received a stay of its deadline to answer the amended complaint pending the resolution of its partial motion to dismiss. Dkt. 55. By this Court's order, GE's answer was not due until 14 days after the resolution of its motion. *Id.* Ultimately, GE did not file its answer until January 31, 2018, *see* Dkt. No. 122, just over two weeks before the February 16 close of discovery.

---

[1] Count II of the complaint and amended complaint alleged a claim for breach of the implied covenant of good faith and fair dealing; that count was dismissed. *See* Dkt. Nos. 85, 121. Count IV alleges a cause of action for promissory estoppel.

### C.    SSI Served Interrogatories Seeking GE's Defenses to SSI's Breach of Contract Claims

SSI anticipated that the stay of GE's deadline to answer the amended complaint might result in a lengthy delay in the filing of GE's answer, including its affirmative defenses. This potential delay was particularly worrying because discovery was scheduled to close on February 16, 2018, barely seven and a half months after entry of the scheduling order. *See* Pretrial Scheduling Order, June 28, 2017, at 1 (Dkt. No. 38). Any moderate delay might well foreclose SSI from learning about GE's defenses during the discovery period, jeopardizing its ability to conduct discovery concerning those defenses. To solve that potential problem, SSI served on GE interrogatories seeking the disclosure of all of GE's defenses to SSI's breach of contract claims, to ensure that it could conduct discovery concerning any and all such defenses. *See* SSI's First Set of Interrogatories, July 31, 2017, at 7-8 (Robbennolt Dec. Ex. A) (Interrogatory Nos. 2 and 3).

Interrogatory No. 2 sought detailed information regarding GE's defenses to Count I, asserting a claim that GE breached the parties' APA by failing to create an ATD program with respect to the SWIFT technology. *Id.* at 7-8. The interrogatory required GE to provide its factual and legal basis for any defense to that claim, to identify all documents that support its defenses, and to identify all witnesses with relevant knowledge regarding those defenses:

> **INTERROGATORY NO. 2:** If GE contends that it is not liable for breach of the APA, provide a detailed description of the factual and legal bases for that contention. The detailed description should include without limitation the identity of

> all documents on which GE bases its contention; the facts on which GE bases its contention; the identity of all persons with knowledge concerning such facts; and the knowledge GE believes each such person has.

*Id.*

Interrogatory No. 3 sought the same detailed information regarding GE's defenses to Count III, asserting a claim that GE breached a post-APA agreement to commercialize the SWIFT technology. *Id.* at 8. Again the interrogatory required GE to provide its factual and legal basis for any defense to that claim, to identify all documents that support its defenses, and to identify all witnesses with relevant knowledge regarding those defenses:

> **INTERROGATORY NO. 3:** If GE contends that it is not liable for breach of the parties' post-APA agreement to commercialize SWIFT, provide a detailed description of the factual and legal bases for that contention. The detailed description should include without limitation the identity of all documents on which GE bases its contention; the facts on which GE bases its contention; the identity of all persons with knowledge concerning such facts; and the knowledge GE believes each such person has.

*Id.*

**D.  GE Did Not Disclose Any Information Regarding the Subject Affirmative Defenses in Response to Interrogatory Nos. 2 and 3**

GE did not provide any information regarding the 22 affirmative defenses listed above (the "subject affirmative defenses") in response to SSI's interrogatories during the discovery period. In fact, GE has never provided responsive information regarding its subject affirmative defenses in response to Interrogatory Nos. 2 and 3.

GE served responses to SSI's interrogatories on August 30, 2017. Robbennolt Dec. Ex. B. In response to Interrogatory No. 2, GE recited a paragraph of boilerplate objections, then indicated that it would produce documents from which relevant information could be obtained. *Id*. at 8-9. GE did not provide any of the detailed information required by the interrogatory, including the factual and legal basis for its defenses to SSI's claim of breach of the APA; the documents that support its defenses; the identification of witnesses with knowledge regarding its defenses; or a summary of the knowledge possessed by each such witness. *Id*. GE's response to Interrogatory No. 3 mirrored its response to SSI's second interrogatory. *Id*. at 9-11. GE again recited a paragraph of boilerplate objections, then stated that it would produce documents pursuant to Rule 33(d). GE again did not provide any of the detailed information required by the interrogatory, including the factual and legal basis for GE's defenses to SSI's claim of breach of the parties' post-APA agreement; the documents that support those defenses; the identification of witnesses with relevant knowledge; or a summary of the knowledge possessed by those witnesses. *Id*.

GE served supplemental answers to Interrogatory Nos. 2 and 3 on November 7, 2017. Robbennolt Dec. Ex. C. In response to Interrogatory No. 2, GE finally provided information regarding its defense to SSI's claim that GE breached the APA by failing to create an ATD with respect to SWIFT. *Id*. at 5-8. GE stated that it had "complied with every obligation under the Asset Purchase Agreement (APA)." *Id*. at 5-6. GE further explained that it "conducted an ATD program to evaluate SWIFT beginning on or around mid-2011, which extended into at least July 2012," described in general terms the work

of the alleged ATD, and stated that "GE determined, in its discretion, that the SWIFT technology was not appropriate for inclusion in an NPI program." *Id.* at 6.  Finally, GE cited, pursuant to Rule 33(d), nearly 175 pages of documents, but did not provide any information about the documents or how they were responsive to Interrogatory No. 2.  *Id.* at 6-8.  GE did not, in its response, disclose any of the subject affirmative defenses or the basis for them.

In response to Interrogatory No. 3, GE provided information regarding its defense to SSI's claim that GE breached the parties' post-APA agreement to commercialize SWIFT.  *Id.* at 10-12.  GE cited "the provision in the APA stating the entire understanding between the parties regarding SWIFT, past and future, is contained in the APA and any future modifications, amendments or agreements related to the same subject matter must be in writing." *Id.* at 10.  GE further stated that "there is no 'post-APA agreement' by which GE promised 'to commercialize SWIFT,' and as such, GE cannot be liable for breach of a contract which does not exist." *Id.*  Finally, GE cited, pursuant to Rule 33(d), the same documents it cited in response to Interrogatory No. 2. *Id.* at 11-12.  Again, GE did not disclose any of the subject affirmative defenses or the basis for them.

### E.    GE Asserted in its Answer 22 Affirmative Defenses to SSI's Breach of Contract Claims It Did Not Disclose in its Interrogatory Responses

As noted above, GE filed its answer to SSI's amended complaint on January 31, 2018, just over two weeks before the close of discovery.  Among other defenses, GE asserted 22 affirmative defenses to SSI's breach of contract claims—the 22 subject

affirmative defenses identified above. GE had not identified any of those defenses in response to Interrogatory Nos. 2 and 3 during the six months since SSI had served those interrogatories, nor did it describe the bases and support for its defenses as required by the interrogatories.

GE's answer did not remedy its failure to respond fully to SSI's interrogatories. By their very nature, affirmative defenses do not provide any of the detailed information required by SSI's interrogatories. GE did not recite any facts to support its subject affirmative defenses, did not identify any supporting documents, and did not disclose any witnesses with relevant knowledge.

**F.** **GE Still Did Not Disclose Any Information Regarding the Subject Affirmative Defenses in its Second Supplemental Response to Interrogatory Nos. 2 and 3 on the Last Day of Discovery**

GE served one additional supplementation to its responses to Interrogatory Nos. 2 and 3 on the last day of discovery, February 16, 2018. Robbennolt Dec. Ex. D. In its response to Interrogatory No. 2, GE cited its contemporaneous supplemental response to Interrogatory No. 7 in support of its claim that it did create an ATD with respect to SWIFT. *Id.* at 12-13. In response to Interrogatory No. 3, GE again denied that it made any promise to commercialize SWIFT, and for the first time identified witnesses with relevant knowledge. *Id.* at 17-18. In neither response did GE identify any of the subject affirmative defenses to SSI's breach of contract claims, nor did it disclose the factual and legal basis for those defenses, identify documents that support its defenses, or identify witnesses with knowledge concerning those defenses. *Id.* at 12-13, 17-18.

### G.    GE Made Substantial New Disclosures in Supplemental Interrogatory Responses on the Last Day of Discovery

As noted above, SSI asserts that GE breached the APA by failing to create an ATD with respect to SWIFT pursuant to GE's "standard policies and procedures." In connection with that claim, SSI propounded two interrogatories that address GE's ATD programs. Interrogatory No. 6 sought information regarding GE's "policies or procedures relating to" ATD programs. Robbennolt Dec. Ex. A at 8-9. Interrogatory No. 7 asked for detailed information regarding "each and every ATD Program that considered, evaluated, or referenced in any way Silent MRI Technology." *Id.* at 9.

At no time during discovery did GE provide a narrative response to Interrogatory No. 6 regarding its policies and procedures for its ATD programs. In its initial response, GE cited a single document comprised of an e-mail and two attachments, one of which was a draft. Robbennolt Dec. Ex. B at 16. GE did not provide any further information until the last day of discovery, when it supplemented its response to cite two additional documents. Robbennolt Dec. Ex. D at 26-27.

GE's initial response to Interrogatory No. 7 was similarly devoid of detail. Robbennolt Dec. Ex. B at 16-19. Substantively, GE recited only that "the ATD Program created to evaluate SWIFT for quiet imaging that also evaluated RUFIS began on or around mid-2011 and extended into at least July 2012." *Id.* at 17. GE then cited nearly two pages of bates numbers of documents, without any explanation of the documents or indication of how they provided responsive information. *Id.* at 18-19. GE only provided detailed response information when it supplemented its interrogatory responses on the

final day of discovery.  Robbennolt Dec. Ex. D at 30-33.  In that response, for the very first time, GE provided substantive information regarding the quiet imaging ATD, with citations to documents that purportedly supported GE's narrative points.  *Id.*

## III.   ARGUMENT

### A.   <u>The Applicable Legal Standards</u>

Rule 33(b)(3) requires a party on whom interrogatories have been served to answer each such interrogatory "separately and fully in writing and under oath."  Fed. R. Civ. P. 33(b)(3).  If, subsequently, that party learns that its response is incomplete or incorrect, Rule 26(e)(1) requires it to supplement its response "in a timely manner:"

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A)   In a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1).  These rules have "a simple but important purpose; specifically, to prevent Trial by ambush."  *Transclean Corp. v. Bridgewood Svcs., Inc.*, 101 F.Supp.2d 788, 797 (D. Minn. 2000) ("*Transclean II*").  *See also Transclean Corp. v. Bridgewood Svcs., Inc.*, 77 F.Supp.2d 1045, 1061 (D. Minn. 1999), *aff'd in relevant part and vacated on other grounds*, 290 F.3d 1364 (8th Cir. 2002) ("*Transclean I*").

Rule 37(c)(1) applies when a party fails to provide information in response to an interrogatory "in a timely manner."  "If a party fails to provide information or identify a

witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) also authorizes the Court to impose "other appropriate sanctions," including those set forth in Rule 37(b)(2)(A)(i)-(vi). Fed. R. Civ. P. 37(c)(1)(C). One of the available sanctions is an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. Rule 37(b)(2)(A)(ii).

"While sanctions under Rule 37(c)(1) are mandatory … exclusion of evidence should not apply if the offending party's failure was 'substantially justified,' or if the failure was 'harmless.'" *Transclean II*, 101 F.Supp.2d at 795. Courts applying Rule 37(c)(1) should consider four factors:

> In determining whether the automatic exclusion provisions of Rule 37(c)(1) should apply, the Court should consider the following four factors in assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and, 4) the availability of a continuance to cure such prejudice.

*Id.* at 795-96, *citing Citizens Bank v. Ford Motor Co.*, 16 F.3d 965, 966 (8th Cir. 1994) and *Millen v. Mayo Found.*, 170 F.R.D. 462, 465 (D. Minn. 1996). *See also Engleson v. Little Falls Area Chamber of Commerce*, 210 F.R.D. 667, 669 (D. Minn. 2002); *North Star Mut. Ins. Co. v. Zurich Ins. Co.*, 269 F.Supp.2d 1140, 1145 (D. Minn. 2003).

SSI's Interrogatory Nos. 2 and 3 required GE to disclose every basis for its contentions that it was not liable for breach of contract. Nevertheless, GE chose not to disclose to SSI in response to those interrogatories the affirmative defenses to SSI's breach of contract claims that it intended to assert. Nor did GE disclose the detailed information concerning those contentions that SSI requested: the factual basis for GE's defenses, the documents that GE contends support its defenses, the identification of witnesses with knowledge relevant to those defenses, and a summary of the relevant knowledge possessed by those witnesses. There is no excuse for GE's failure to disclose that information in response to SSI's interrogatories. Accordingly, pursuant to Rule 37(c)(1), GE may not use any of the information or evidence it failed to disclose on any motion, at any hearing, or at trial in this matter. The Court should issue an order barring GE from doing so, and prohibiting GE, pursuant to Rule 37(b)(2)(A)(ii), from supporting the subject affirmative defenses.

**B.**    **The Court Should Order that GE Cannot Present Evidence on a Motion or at Trial in Support of the Subject Affirmative Defenses to SSI's Breach of Contract Claims**

1.    <u>GE Failed to Disclose the Subject Affirmative Defenses and Its Support Therefor in Response to Interrogatory Nos. 2 and 3</u>

Interrogatory Nos. 2 and 3 required GE to disclose "the factual and legal bases" for any contention by GE that it is not liable for breach of contract. Robbennolt Dec. Ex. A at 7-8. Those interrogatories encompass any defense GE may raise, from a simple denial that it breached a contract with SSI to a contention that a contract is not enforceable because it is not in writing as required by the Statute of Frauds or was not

entered into by a GE representative with authority to do so. Each of the subject affirmative defenses listed above constitutes an argument by GE that it is not liable for breach of contract; GE was therefore required to disclose each of those affirmative defenses in response to SSI's interrogatories, along with the supporting information requested.

GE unequivocally failed to disclose any information regarding the subject affirmative defenses in response to Interrogatory Nos. 2 and 3. None of those defenses are identified or described in any way in any of GE's responses to those interrogatories. *See* Robbennolt Dec. Ex. B at 8-11; Robbennolt Dec. Ex. C at 4-12; and Robbennolt Dec. Ex. D at 8-18. Further, GE did not provide any of the supporting information requested in the interrogatories: the facts on which GE bases its defenses, the documents that support those defenses, the identity of all witnesses with relevant knowledge concerning the defenses, and a summary of the relevant knowledge of each such witness. *Id.* GE's failure to provide the requested information constitutes a violation of Rules 33(b)(3) and 26(e)(1).

The long list of documents GE provided in response to Interrogatory Nos. 2 and 3 does not satisfy its obligations. *See* Robbennolt Dec. Ex. C at 6-8, 11-12. Interrogatory Nos. 2 and 3 are contention interrogatories, seeking the basis for GE's contention that it is not liable for breach of contract.[2] Rule 33(d), which permits a party to product

---

[2] Contention interrogatories are an appropriate discovery tool: "The purpose of contention Interrogatories, such as those propounded by the Plaintiffs, is to narrow and define issues for Trial beyond what may be ascertained from the parties' pleadings." *Transclean I*, 77 F.Supp.2d at 1062. They were a particularly important tool in this case, in which GE's

business records in response to an interrogatory, is not appropriate for contention interrogatories. "'[C]ourts have consistently held that [Rule 33(d)] cannot be used with respect to contention interrogatories,' like those at issue here." *United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594 (D. D.C. 2016). "This is because 'documents normally reveal evidence, not a party's contentions or statement of facts which a party contends supports the complaint.'" *Id.*, *quoting SEC v. Elfindepan*, *S.A.*, 206 F.R.D. 574, 577 (M.D. N.C. 2002). *See also Fleming v. Escort, Inc.*, Civ. No. 09-105, 2011 WL 573599, at *2 (D. Idaho Feb. 13, 2011) ("The legal contentions of a party are not contained in old business records, and so must be explained by counsel."); *Rodriguez v. Bausch & Lomb, Inc.*, Civ. No. 8:09-cv-2377, 2010 WL 11507471, at *2 (M.D. Fla. April 12, 2010) (Rule 33(d) is "inappropriate when the interrogatory asks a party to state its contentions or to state facts supporting its allegations"); *In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (S.D. N.Y. 1997) (Rule 33(d) inappropriate where interrogatories ask the party to identify the facts supporting various allegations). When the interrogatories "depend on contentions of law and fact," they require more specific answers than references to a list of documents. *Rodriguez*, 2010 WL 11507471, at *3.

Even if documents could disclose a party's contentions, Rule 33(d) is not appropriate because the burden on the parties is not equal: "even assuming that Rule 33(d) could be applied to contention interrogatories, Armstrong is 'more familiar with [his] contentions than is [the government], so the burden is not equal." *Tailwind*, 317

---

deadline to answer was stayed for the vast majority of the discovery period. In any event, GE did not object to Interrogatory Nos. 2 and 3 on the grounds that they were inappropriate or untimely contention interrogatories. *See* Robbennolt Dec. Ex. B at 8-10.

F.R.D. at 594, *quoting Fresenius Med. Care Holding v. Baxter Int'l*, 224 F.R.D. 644, 652 (N.D. Cal. 2004). In any case, GE's citation, without comment or narrative, to nearly 200 pages of documents is inconsistent with the requirements of Rule 33(d). "When employing Rule 33(d), a responding party must 'specifically identify the documents that contain the answers.' *Covad Comm.'s Co. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D. D.C. 2009). '[M]aking only a general reference to a mass of documents or records is an abuse of Rule 33(d).'" *Tailwind*, 317 F.R.D. at 594-95, *quoting Hypertherm, Inc. v. American Torch Tip Co.*, Civ. No. 05-cv-373, 2008 WL 5423833, at *3 (D. N.H. Dec. 29, 2008).

In any event, the documents cited by GE do not disclose the subject affirmative defenses or the facts that support those defenses. The documents all appear to relate to GE's "quiet imaging" ATD, and do not relate in any identifiable way to the subject affirmative defenses.

Finally, the information concerning GE's subject affirmative defenses was not "otherwise made known to [SSI] during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). GE's duty to supplement its interrogatory responses pursuant to Rule 26(e)(1) "is excused only if the information at issue has 'already been revealed by a witness in a deposition or otherwise through formal discovery, or, alternatively, by providing the additional information in writing.'" *Transclean II*, 101 F.Supp.2d at 797, *quoting Gonsalves v. City of New Bedford*, 168 F.R.D. 102, 110 (D. Mass. 1996). GE's subject affirmative defenses, and the factual and documentary basis for them, was never provided to SSI in discovery through deposition testimony or other written disclosure. Furthermore, the conclusory statements of GE's answer itself do not discharge GE's

obligation to respond fully to Interrogatory Nos. 2 and 3.  A party's "suggestion that the boilerplate allegations in its Answer, and Counterclaims, should substitute for Interrogatory responses, and should relieve it of any obligation to supplement any incomplete responses, is plainly wrong." *Transclean I*, 77 F.Supp.2d at 1062.

2.  GE's Failure to Disclose Information Concerning Its Subject
Affirmative Defenses Was Not Substantially Justified

GE's failure to identify its subject affirmative defenses in response to Interrogatory Nos. 2 and 3, and its failure to provide any of the supporting information requested, was not "substantially justified." Fed. R. Civ. P. 37(c)(1).  SSI raised its concerns about GE's failure to respond fully to Interrogatory Nos. 2 and 3 in connection with the parties' meet-and-confer on that issue.  *See* Letter from P. Robbennolt to L. Drew, February 28, 2018, at 1-3 (Robbennolt Dec. Ex. E).  In its response, GE provided only one explanation of its actions in an attempt to justify its failure to provide information regarding its subject affirmative defenses in response to SSI's interrogatories:  GE was not required to provide the information to SSI because "GE's Answer to SSI's Amended Complaint was not due until January 31, 2018." *See* Letter from L. Drew to P. Robbennolt, March 7, 2018, at 1.

GE's excuse conflates its obligation to answer SSI's complaint with its obligation to respond fully to SSI's interrogatories.  SSI's Interrogatory Nos. 2 and 3, which asked GE to identify its defenses to SSI's breach of contract claims and the support for those defenses, are entirely proper. *See*, *e.g.*, *National Academy of Recording Arts & Sciences, Inc. v. On Point Events, LP.*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) (interrogatory asking

"defendant to identify its affirmative defenses and state the facts supporting these defenses, is a contention interrogatory under Rule 33(a)(2)").  Rule 33(b)(3) and Rule 26(e)(1) require GE to answer those interrogatories "separately and fully in writing under oath."  GE is not relieved of that obligation to respond fully to SSI's interrogatories simply because it had not yet filed its answer.  In any case, GE did not respond fully to Interrogatory Nos. 2 and 3 even after it filed its answer; GE has never identified the factual basis for its subject affirmative defenses, identified the documents that support those defenses, or identified witnesses with knowledge of those defenses in response to Interrogatory Nos. 2 and 3.

Instead of relieving GE of its obligation to respond fully to Interrogatory Nos. 2 and 3, the stay of GE's deadline to answer the amended complaint actually highlights the importance of SSI's interrogatories and GE's response.  Because GE was not required to file an answer until the last days of the discovery period, Interrogatory Nos. 2 and 3 were the only way for SSI to learn GE's defenses so it could conduct discovery and prepare its case.  GE's refusal to disclose its defenses, and the factual and documentary basis for those defenses, effectively eliminated SSI's ability to conduct discovery concerning those defenses and to prepare for summary judgment and trial.

GE has not argued that it could not have identified its affirmative defenses, and the factual and evidentiary basis for those defenses, during the discovery period.  There is no basis for such a claim.  The fact that GE had not yet answered, and pled its defenses, did not prevent GE from evaluating SSI's claims and its own potential defenses so that it could provide a complete response to Interrogatory Nos. 2 and 3.  GE knew the basis for

SSI's breach of contract claims when it initially responded to those interrogatories.  It knew that SSI asserted that GE breached the APA by failing to create an ATD with respect to SWIFT.  *See* Complaint at 8 (Dkt. No. 1); Amended Complaint at 8-9 (Dkt. No. 22).  It knew that SSI asserted that GE had breached a post-APA contract between the parties pursuant to which GE agreed to commercialize the SWIFT technology.  *See* Complaint at 9 (Dkt. No. 1); Amended Complaint at 10 (Dkt. No. 22).  It even knew the details regarding one such post-APA agreement, because SSI alleged that, in September 2014, Jason Polzin and Baldev Ahluwalia of GE promised Danny Cunagin of SSI that GE would commercialize the SWIFT technology; in exchange, SSI made investments to assist with that commercialization and refrained from taking action to enforce the APA. Amended Complaint at ¶¶ 37-38 (Dkt. No. 22).  That information was sufficient for GE to formulate its defenses to SSI's breach of contract claims, and to disclose those defenses and the basis for them in response to Interrogatory Nos. 2 and 3.  In fact, GE was obliged to do so, an obligation that was particularly important with respect to GE's affirmative defense because GE bears the burden of proof on those defenses.  *Lasser v. American Gen. Life Ins. Co.*, Civ. No. 14-cv-3326 (MJD/LIB), 2015 WL 12778004, at *3 (D. Minn. April 3, 2015).

GE's attempt to place blame on SSI for GE's failure to disclose is unavailing. During the meet-and-confer process, GE argued that SSI should have "complained about the adequacy of GE's answers" to Interrogatory Nos. 2 and 3.  *See* Robbennolt Dec. Ex. F at 2.  Until GE disclosed its affirmative defenses, however, SSI could not anticipate what, if any, affirmative defenses GE would pursue in this case, and had no way of knowing

that GE had failed to disclose 22 separate affirmative defenses that it apparently intended to assert at trial. Rule 37(c) does not require as a prerequisite to its application that SSI "complain" about the adequacy of GE's response. "For litigation to function efficiently, parties must provide clear and accurate responses to discovery requests. Parties are 'entitled to accept previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue." *Transclean II*, 101 F.Supp.2d at 797, *quoting Transclean II*, 77 F.Supp.2d at 1061.

GE has not argued that it did not have the information SSI requested regarding its defenses to SSI's breach of contract claims. Instead, it is apparent that GE simply chose not to identify its subject affirmative defenses and disclose the basis for those defenses to SSI because it had not yet answered, and wanted to keep its defenses secret. This constitutes an improper attempt to conduct "trial by ambush," the very result that Rules 26(e)(1) and 37(c) were designed to prevent. The Court should penalize GE's failure to disclose by ordering that GE may not use on any motion, at any hearing, or at trial, any information and evidence in support of its subject affirmative defenses.

3. GE's Failure to Disclose Information Concerning Its Subject Affirmative Defenses Was Not Harmless

The burden of proving that a failure to disclose information was "harmless" under Rule 37(c)(1) rests on the party that failed to disclose. *SPX Corp. v. Bartec USA, LLC*, 574 F.Supp.2d 748, 751 (E.D. Mich. 2008). Nevertheless, the harm to SSI resulting from GE's failure to disclose its subject affirmative defenses and the basis for them is apparent.

GE did not identify any of the subject affirmative defenses to SSI's breach of contract claims before it filed its answer on January 31, just over two weeks before the close of discovery. It did not then, or ever, provide the detailed information SSI requested in Interrogatory Nos. 2 and 3 with respect to those defenses: the facts that support each defense, the documents that support each defense, and witnesses with knowledge relevant to each defense. This failure prevented SSI from taking critical discovery concerning the subject affirmative defenses. For example, SSI could not seek additional documents that might be relevant to the defenses, nor could it take depositions of witnesses who might have relevant knowledge. At least some of the seven deponents whose depositions SSI took before GE filed its answer may have had relevant information regarding the subject affirmative defenses; GE's failure to identify those defenses earlier prevented SSI from asking questions regarding the defenses of those witnesses.

In fact, SSI remains in the dark to this day regarding GE's contentions with respect to the subject affirmative defenses. A good example is provided by GE's defense based on "lack of authority, both actual and apparent." Answer at ¶ 79 (Dkt. No. 122). SSI does not know, because GE has not disclosed, the identity of all of the GE representatives that it contends allegedly lacked "actual and apparent" authority. Nor does SSI know the basis for GE's determination regarding which of its representatives do have actual authority: GE has not identified a single policy, board resolution, or other document that establishes actual authority for any GE representative, has not disclosed a single fact that supports its claim that its representatives lacked authority, and has not

disclosed any documents or facts that bear on the scope of any of its representatives' actual authority. Further, GE has not disclosed any basis for its contention that its representatives lacked apparent authority. Because GE did not even identify its affirmative defense of lack of authority until the close of discovery, and has never disclosed the basis for that defense, SSI was prevented from taking any discovery on the issue in order to prepare for summary judgment and trial. GE's witnesses could submit declarations to the Court or testify at trial and say literally anything regarding their alleged lack of authority, and SSI would have no means to respond meaningfully because it could not take discovery.

Another example is provided by GE's defense of "impossibility of performance," one of the three affirmative defenses set forth in GE's "Seventh Affirmative Defense." Dkt. No. 122 at ¶ 70. What obligations does GE contend that it was impossible to perform? Impossibility must arise from unanticipated circumstances. *Powers v. Siats*, 70 N.W.2d 344, 348 (Minn. 1955). What does GE contend constitute such unanticipated circumstances? Impossibility may include situations in which "performance would cast upon the promisor an excessive or unreasonably burdensome hardship, loss, expense, or injury." Is that what GE contends? What "hardship, loss, expense, or injury" was GE allegedly subjected to? Which GE witnesses have knowledge that is relevant to all of these issues surrounding its "impossibility of performance" defense? SSI does not know the answers to any of these questions, because GE did not disclose that information as required by Interrogatory Nos. 2 and 3, and was unable to take document and deposition discovery regarding these issues.

Finally, the set of interrogatories that SSI served with respect to GE's affirmative defenses does not render GE's failure to disclose its subject affirmative defenses "harmless." *See* GE's Answers to Plaintiff's Third Set of Interrogatories, March 12, 2018. Because GE disclosed its subject affirmative defenses less than 30 days before the close of discovery, SSI could only serve those interrogatories with GE's consent or the Court's permission. *See* Order on Stipulation, February 16, 2018 (Dkt. No. 127). GE answered the interrogatories on March 12, nearly a month after the close of discovery; SSI was foreclosed from conducting any further discovery regarding those defenses, including deposition and document discovery.[3] GE's responses were cursory at best. For example, in response to an interrogatory directed in part to GE's "impossibility of performance" defense, GE failed to disclose any of the information that answers the questions posed above, instead relying on the cursory allegation that "commercialization [of SWIFT] would have been impractical and/or impossible due to hardware issues with SWIFT that prevented GE from acquiring clinically acceptable images using the SWIFT technology." Robbennolt Dec. Ex. G at 10-11.

GE's failure to identify the subject affirmative defenses, or to provide the required information regarding the factual and documentary basis for those defenses, has prevented SSI from conducting discovery on those defenses in preparation for summary judgment and trial. Accordingly, the Court should order that GE may not use on any

---

[3] Because discovery had closed, SSI served the interrogatories so it could identify frivolous affirmative defenses.

motion, at any hearing, or at trial, any information and evidence in support of its subject affirmative defenses.

        4.      <u>Exclusion of Evidence in Support of GE's Subject Affirmative Defenses is Mandated Under Rule 37(c)(1)</u>

Under Rule 37(c)(1), exclusion of the evidence and information that GE did not provide in response to Interrogatory Nos. 2 and 3 regarding its subject affirmative defenses is mandatory unless GE's failure was substantially justified or harmless. As shown above, GE's failure in this case was neither. The four factors to be considered under Rule 37(c)(1) warrant exclusion. *See Transclean II*, 101 F.Supp.2d at 795-96. The information at issue—the identity of and basis for 22 affirmative defenses to SSI's breach of contract claims—is critically important, and GE should have disclosed it early in discovery. GE's explanation for its failure to disclose, as explained above, does not justify that failure. SSI will be severely prejudiced should GE be permitted to use the withheld information on summary judgment or at trial. Finally, given the amount of discovery that would be necessary for SSI to investigate the basis for 22 affirmative defenses—including additional document discovery and additional depositions, of both previous deponents and new witnesses—it is impractical to grant a continuance to cure the prejudice to SSI.

Courts in this district and elsewhere routinely exclude evidence regarding affirmative defenses that defendants failed to disclose in a timely fashion pursuant to Rules 33(b)(3) and 26(e)(1). For example, in *Transclean I*, the defendant in a patent infringement case attempted to rely on a patent invalidity defense and noninfringement

defenses that it had not disclosed in response to interrogatories. 77 F.Supp.2d at 1059-1061. The court noted that the defendant's failure to disclose "precluded the Plaintiffs from conducting discovery on these issues, clearly to the Plaintiffs' prejudice." *Id.* at 1063. Accordingly, the court barred the defendant from arguing its undisclosed defenses. *Id.* at 1063. That ruling was upheld on appeal: "Transclean legitimately sought to discover Bridgewood's grounds for its defense of noninfringement and was entitled to a reply to its interrogatory." *Transclean Corp. v. Bridgewood Svcs., Inc.*, 290 F.3d 1364, 1373 (8th Cir. 2002). Exclusion of the evidence was warranted due to clear prejudice when Plaintiff "was precluded from conducting discovery on the infringement issues." *Id.* at 1373-74. Similarly, in *SPX*, the defendant in a patent infringement suit attempted to rely on invalidity defenses that it had not disclosed in response to an interrogatory requesting "the factual and legal bases for [its invalidity] allegations …." 574 F.Supp.2d at 749-50. The court barred the defendant from presenting evidence regarding the undisclosed defenses.

GE's failure to disclose its subject affirmative defenses in response to Interrogatory Nos. 2 and 3, as well as the factual and evidentiary basis for those defenses, was not substantially justified or harmless. Accordingly, SSI respectfully requests that the Court bar GE from presenting evidence to support those defenses on any motion, at any hearing, or at trial.

C.   **The Court Should Order that GE Cannot Use on a Motion or at Trial Any Information Disclosed in GE's February 16, 2018 Supplemental Responses to Interrogatory Nos. 6 and 7**

As set forth above, GE disclosed for the first time on the last day of discovery—February 16, 2018—substantial information in response to SSI's Interrogatory Nos. 6 and 7, which sought information regarding GE's policies and procedures for ATD programs, and information regarding any ATD program that addressed silent MR technologies, including SWIFT.  Because SSI had no opportunity to conduct discovery concerning the information disclosed on the last day of the discovery period, the Court should bar GE from using that information on any motion or at trial.

In its initial response to Interrogatory No. 6, GE provided no narrative response regarding its policies and procedures for ATD programs, and cited a single document. Robbennolt Dec. Ex. B at 16.  GE did not provide any further information until the last day of discovery, when it supplemented its response to cite two additional documents. Robbennolt Dec. Ex. D at 26-27.  The Court should bar GE from using the newly-cited documents on any motion or at trial.

GE's initial response to Interrogatory No. 7 was similarly devoid of detail. Robbennolt Dec. Ex. B at 16-19.  GE stated that "the ATD Program created to evaluate SWIFT for quiet imaging that also evaluated RUFIS began on or around mid-2011 and extended into at least July 2012." *Id.* at 17.  GE then cited nearly two pages of bates numbers of documents, without any explanation of the documents or indication of how they provided responsive information.  *Id.* at 18-19.  On the final day of discovery, for the very first time, GE provided substantive information regarding the quiet imaging ATD,

with citations to documents that purportedly supported GE's narrative points. *Id.* The Court should bar GE from using any of the information that it first provided to SSI on February 16, 2018.

## CONCLUSION

For the above-stated reasons, SSI respectfully requests that the Court grant in full its motion to exclude evidence not disclosed in interrogatories.

Dated: March 27, 2018  **WINTHROP & WEINSTINE, PA.**

By:＿＿s/ Paul J. Robbennolt＿＿＿＿＿＿
    Devan V. Padmanabhan #240126
    Paul J. Robbennolt #240497
    Lisa B. Ellingson #389458
225 South Sixth Street
Suite 3500
Minneapolis, Minnesota 55402
Telephone: (612) 604-6400
Facsimile: (612) 604-6800
dpadmanabhan@winthrop.com
probbennolt@winthrop.com
lellingson@winthrop.com

*ATTORNEYS FOR PLAINTIFF STEADY STATE IMAGING, LLC*

15194748v1

15194748v1