## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Steady State Imaging, LLC,

        Plaintiffs,

    v.

General Electric Company,

        Defendant.

Civil Action No. 17-cv-01048 JRT-KMM

## DEFENDANT GENERAL ELECTRIC COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF PLAINTIFF SSI'S SECOND AND THIRD SUPPLEMENTAL ANSWERS TO INTERROGATORY NO. 1

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................. 1

II.     FACTUAL BACKGROUND ........................................................ 2

    A.  SSI's Original Answer to Interrogatory No. 1 and GE's Repeated
        Demands for Supplementation ....................................................... 6

    B.  SSI's First Supplemental Answer to Interrogatory No. 1 ........................ 11

    C.  SSI's Second Supplemental Answer to Interrogatory No. 1 .................... 12

    D.  SSI's Third Supplemental Answer to Interrogatory No. 1 ....................... 13

III.    LEGAL STANDARD ................................................................. 18

IV.     ARGUMENT ................................................................................ 19

    A.  SSI's Second and Third Supplemental Answers to Interrogatory
        No. 1 Were Untimely. ................................................................... 20

    B.  SSI's Untimely Disclosures of New Alleged Post-APA Promises
        in Its Second and Third Supplemental Answers Have Prejudiced
        GE. ............................................................................................ 24

    C.  Striking SSI's Untimely Disclosures Is the Appropriate Remedy. ......... 29

    D.  The Remedy of Striking the New Promises Identified in SSI's
        Second and Third Supplemental Answers Is Not Unduly Harsh. ......... 31

    E.  GE Requests in the Alternative that It Be Granted Leave to
        Supplement Its Initial Disclosures. ................................................ 31

V.      CONCLUSION ............................................................................ 31

# TABLE OF AUTHORITIES

**Cases**

*3M Innovative Props. Co. v. Tomar Elecs., Inc.*,
  Civ. No. 05-756 MJD/AJB,
  2006 U.S. Dist. LEXIS 80571 (D. Minn. July 21, 2006) ........................................... 24

*Baird v. Burlington N. Santa Fe*,
  Civ. No. 11-1323 (DWF/LIB),
  2013 U.S. Dist. LEXIS 189467 (D. Minn. Mar. 1, 2013) ........................................... 19

*B-K Lighting, Inc. v. Vision3 Lighting*,
  930 F. Supp. 2d 1102 (C.D. Cal. 2013) ........................................................................ 29

*Hancock v. Hobbs*,
  967 F.2d 462 (11th Cir. 1992) ...................................................................................... 29

*Havenfield Corp. v. H & R Block, Inc.*,
  509 F.2d 1263 (8th Cir. 1975) ...................................................................................... 19

*Laukus v. Rio Brands, Inc.*,
  292 F.R.D. 485 (N.D. Ohio 2013) ........................................................................... 30, 31

*Longlois v. Stratasys, Inc.*,
  88 F. Supp. 3d 1058 (D. Minn. 2015) ...................................................................... 19, 20

*Trost v. Trek Bicycle Corp.*,
  162 F.3d 1004 (8th Cir. 1998) .................................................................................. 19, 30

*United States v. Procter & Gamble Co.*,
  356 U.S. 677 (1958) ...................................................................................................... 18

*Woods v. Deangelo Marine Exhaust, Inc.*,
  692 F.3d 1272 (Fed. Cir. 2012) .................................................................................... 29

**Other Authorities**

8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
  § 2049.1 (3d ed. 2011) .................................................................................................. 29

**Rules**

Fed. R. Civ. P. 16 .............................................................................................................. 19

Fed. R. Civ. P. 26(e) ...................................................................18, 19, 20, 29, 30

Fed. R. Civ. P. 37(c) ..........................................................................19, 29, 30

# I. INTRODUCTION

Defendant General Electric Company ("GE") moves to strike as untimely portions of Plaintiff Steady State Imaging, LLC's ("SSI's") Second and Third Supplemental Answers to GE's Interrogatory No. 1, which were served on January 25, 2018, and February 16, 2018, respectively, on the eve of the February 16, 2018, fact-discovery cutoff. As discussed in detail below, the context surrounding these late-stage disclosures suggests that SSI deliberately withheld responsive information as late as possible. At a minimum, the timing of SSI's supplemental answers demonstrates a serious lack of diligence on the part of SSI. In either case, the timing of these supplemental answers has impaired GE's ability to defend itself against SSI's allegations.

In Counts III and IV of its Complaint and Amended Complaint, SSI asserted claims of breach of contract and promissory estoppel. Alleged "promises" made by GE personnel form the backbone of these claims. So that it could learn the full factual bases for these claims at the beginning of discovery, GE served Interrogatory No. 1 on July 13, 2017. This interrogatory sought information regarding promises SSI alleges individuals at GE "repeatedly" made regarding commercialization of SWIFT technology after the parties' April 2011 Asset Purchase Agreement ("APA") was executed, i.e., "post-APA promises."

SSI first answered Interrogatory No. 1 on August 14, 2017, identifying only two alleged promises and disclosing little more than the thin allegations set forth in its Amended Complaint. In the ensuing four months, GE repeatedly demanded that SSI supplement its answer to Interrogatory No. 1 to identify all alleged promises so that GE could defend against SSI's still nebulous allegations. SSI finally supplemented its answer on December 11, 2017, to identify one additional alleged promise and to provide additional detail regarding one of the previously identified promises.

Over six weeks later, on January 25, 2018, and three weeks before the close of fact discovery, SSI served its Second Supplemental Answer to Interrogatory No. 1. Three weeks after that, on February 16, 2018, the last day of fact discovery, SSI supplemented its answer again. SSI's timing in serving two supplemental answers at the eleventh hour to identify *six entirely new promises* (on top of the three it had already identified) unfairly prejudices GE's ability to defend against SSI's allegations.

GE respectfully requests that portions of SSI's Second and Third Supplemental Answers to Interrogatory No. 1 be stricken, as set forth below.

## II.  FACTUAL BACKGROUND

In its Amended Complaint (Dkt. 22), filed May 19, 2017, SSI asserted four counts against GE:

(I) Breach of Contract – Asset Purchase Agreement (¶¶ 41-46);

(II) Breach of Implied Covenant of Good Faith and Fair Dealing (¶¶ 47-51);

(III) Breach of Contract – Post-APA Agreement to Commercialize SWIFT Technology (¶¶ 52-57); and

(IV) Promissory Estoppel (¶¶ 58-63).

Count II has been dismissed by the Court. (Dkt. 121.) Two of the three remaining counts in SSI's Amended Complaint, **Counts III and IV**, are premised on alleged post-APA promises and representations made by individuals at GE regarding commercialization of the SWIFT technology.

The Amended Complaint itself provides almost no detail regarding SSI's allegations beyond vague statements. In their entirety, SSI's allegations are:

- "After the execution of the APA, GE repeatedly promised SSI that GE would commercialize the SWIFT Technology" (Dkt. 22 at ¶ 36);

- "For example, in September 2014, Jason Polzin and Baldev Ahluwalia of GE promised to Danny Cunagin of SSI that GE would commercialize the SWIFT Technology" (*Id.* at ¶ 37);

- "GE's representations to SSI after the execution of the APA that it would commercialize the SWIFT Technology constitute a valid and enforceable contract" (*Id.* at ¶ 53);

- "After execution of the APA, GE promised to commercialize the SWIFT Technology" (*Id.* at ¶ 59).

SSI's Amended Complaint includes no other information regarding the alleged timing or content of any other alleged promises, the individuals alleged to have made such other promises, or any other allegations that might support SSI's claim that one or more alleged promise can form the basis of a breach of contract or promissory estoppel claim.

GE moved to dismiss Counts III and IV of SSI's Amended Complaint, arguing that SSI's allegations are insufficient to state a claim for breach of contract or promissory estoppel. (Dkt. 26 at 14, 17.) Specifically, GE pointed out that the Amended Complaint includes no reference to any executed, written instrument. (*Id*. at 13.) In addition, it includes:

> [N]o allegations that the parties ever agreed on how or in what medium the SWIFT Technology would be commercialized (i.e. for MRI or some other purpose), what timeframe the parties agreed to, that these purported statements in September 2014 constituted a bona fide offer that was accepted, or that Jason Polzin and Baldev Ahluwalia had authority to bind GE if these statements were indeed an offer.

(*Id.*) GE also argued that SSI's Amended Complaint includes:

> [N]o allegations that the parties agreed upon the alleged consideration exchanged—consideration that, even after SSI's amendments, remains limited to vague references to investments and to a purported decision to "refrain from taking action to enforce the APA or to reacquire rights to the SWIFT Technology."

(*Id.*)

The Court denied GE's motion to dismiss Counts III and IV, allowing SSI's "post-APA promise" claims to go forward. In doing so, the Court noted, "Certainly SSI's allegations concerning the post-APA agreement are not as specific as they could be." (Dkt. 85 at 22 (quotation omitted).) Details surrounding the promises that SSI alleges GE "repeatedly" made are critical to GE's ability to defend itself against Counts III and IV, particularly because the alleged promises are not conveyed, memorialized, or referenced in any document produced in the case. SSI has been in sole possession of this information.

In an effort to obtain this critical information as early as possible, GE served Interrogatory No. 1 on July 13, 2017:

**Interrogatory No. 1:**

Identify and describe every "promise" or "representation" that SSI alleges GE made, after execution of the APA, to commercialize SWIFT as alleged in Paragraphs 36, 37, 53 and 59 of the Amended Complaint, including, but not limited to providing for each "promise": the date of the alleged promise; each person who was aware of, made, or received the alleged promise; a description of each identified person's knowledge related to the alleged promise; the obligations of each party in relation to the alleged promise; the date(s) by which each party was required to satisfy its obligations in relation to the alleged promise; the details of any consideration offered and/or provided by SSI in relation to the alleged promise, including the details of any "investments" made by SSI as alleged in Paragraphs 38 and 54 of the Amended Complaint; the date(s) by which SSI satisfied any of its obligations in relation to

the promise; and any documents that evidence the existence or substance of the alleged promise.

(Defendant General Electric Company's First Set of Interrogatories to Plaintiff Steady State Imaging, LLC, dated July 13, 2017 [Ex. 1[1]], at 7-8.)

Absent a complete response to Interrogatory No. 1, GE was left to guess, until the close of fact discovery, the basis for two of the three remaining Counts in SSI's Amended Complaint. SSI has, in effect, sought to leverage the imbalance of information between the parties, even though SSI had to have known what promises it had it mind when it filed its Amended Complaint.

**A.    SSI's Original Answer to Interrogatory No. 1 and GE's Repeated Demands for Supplementation**

SSI first answered Interrogatory No. 1 on August 14, 2017, identifying in the vaguest of terms only two alleged promises:

1.    "[I]n late November or early December of 2011, Jacques Coumans of GE promised to Danny Cunagin and Troy Kopischke at GE's RSNA booth that GE would commercialize SWIFT"; and

2.    "[I]n September 2014, Jason Polzin and Baldev Ahluwalia of GE promised to Danny Cunagin of SSI that GE would commercialize SWIFT."

_____

[1] References to "Ex. _" herein refer to exhibits filed with the Declaration of Marla R. Butler, filed herewith.

(Plaintiff's Answers to Defendant General Electric Company's First Set of Interrogatories to Plaintiff Steady State Imaging, LLC, dated Aug. 14, 2017 [Ex. 2], at 6.) The second of these alleged promises simply repeats what SSI alleged in its Amended Complaint. (Dkt. 22 at ¶ 37.)

Regarding alleged consideration, SSI again simply repeated what it alleged in its Amended Complaint, stating only that "[i]n exchange for GE's promises, SSI made investments to assist with SWIFT commercialization and refrained from taking action to enforce the APA or to reacquire rights to SWIFT." (Ex. 2 at 6; Dkt. 22 at ¶ 38.)

Approximately three weeks after SSI first answered Interrogatory No. 1, on September 7, 2017, GE informed SSI that its answer to Interrogatory No. 1 was deficient. (*See* Letter from counsel for GE, N. Frank, to counsel for SSI, L. Ellingson, dated Sept. 7, 2017 [Ex. 3], at 1-2.) GE noted the numerous ways in which SSI's answer was deficient and demanded a commitment from SSI that it would supplement its answer to Interrogatory No. 1. (*Id.* at 3.) SSI responded on September 12, noting that "SSI is continuing to investigate this matter and has reserved the right to supplement. SSI intends to supplement its answers to Interrogatories No. 1 and 3 *as additional information is discovered*." (Letter from counsel for SSI, L. Ellingson, to counsel for GE, N. Frank, dated Sept. 12, 2017 [Ex. 4], at 1 (emphasis added).) Notably, and as discussed in further detail

below, the "additional information" SSI would later purport to discover was composed entirely of information in the exclusive possession of SSI: information from Troy Kopischke and Danny Cunagin—the only two employees of SSI—and information from Michael Garwood—the inventor of the SWIFT technology and an SSI owner.

On October 2, 2017, GE reiterated its demand that SSI supplement its deficient answer to Interrogatory No. 1. (*See* Letter from counsel for GE, E. Cowing, to counsel for SSI, L. Ellingson, dated Oct. 4, 2017 [Ex. 5], at 2.) GE requested that SSI confirm by October 9 that it would supplement its answers to GE's interrogatories, including Interrogatory No. 1. (*Id.* at 3.) Rather than agree to expeditiously supplement its answer to Interrogatory No. 1, SSI indicated that "GE's repeated demands that SSI confirm that it will supplement its discovery responses are unnecessary and unproductive." (Letter from counsel for SSI, L. Ellingson, to counsel for GE, E. Cowing, dated Oct. 9, 2017 [Ex. 6], at 1.) SSI reiterated its intent "to supplement its discovery responses as additional information is discovered." (*Id.*) SSI also stated that "[g]iven that GE has not provided any authority requiring SSI to commit to an earlier date for supplementation, SSI will supplement in a timely manner as required by the Federal Rules of Civil Procedure." (*Id.*)

GE raised SSI's deficient answer to Interrogatory No. 1 again on October 24, 2017. (*See* Letter from counsel for GE, E. Cowing, to counsel for SSI, L. Ellingson, dated Oct. 24, 2017 [Ex. 7].) In that letter, GE referenced its previously filed motion to dismiss and noted that "SSI's Amended Complaint is devoid of any factual basis upon which GE can ascertain either (a) the existence of the post-APA agreement, or (b) the terms of the alleged agreement." (*Id.* at 1.) GE noted that "SSI's continued refusal to provide information concerning the existence and terms of that alleged agreement 6 months after filing its amended complaint is hindering GE's ability to defend against SSI's allegations." (*Id.*) As a result, GE requested a date within two weeks of October 24 by which GE could expect a supplemental answer to GE Interrogatory No. 1. (*Id.*) Absent a commitment from SSI, GE advised that it would raise the issue with the Court. (*Id.*) In response, SSI stated, "As [counsel has] already explained multiple times, if SSI learns that in some material respect its discovery responses are incomplete or incorrect, it will supplement in a timely manner as required by the Federal Rules." (Letter from counsel for SSI, L. Ellingson, to counsel for GE, E. Cowing, dated Oct. 26, 2017 [Ex. 8], at 1.) SSI also stated its intent to supplement its discovery responses "to the extent required by the Federal Rules by November 7." (*Id.*)

SSI did not supplement its answer to Interrogatory No. 1 by November 7, 2017. The parties thus met and conferred regarding, *inter alia*, SSI's deficient answer to Interrogatory No. 1 on November 10, 2017. (*See* Letter from counsel for GE, E. Cowing, to counsel for SSI, P. Robbennolt, dated Nov. 14, 2017 [Ex. 9].) As noted in GE's summary letter to SSI, during that meet-and-confer, SSI did not agree to supplement its answer to Interrogatory No. 1. (*See id.* at 2.) GE indicated that "given our understanding that SSI's response to Interrogatory No. 1 contains all the information SSI has with respect to details of the alleged post-APA Agreement, GE plans to ask the Court to limit [SSI's] Response to Interrogatory No. 1 to the information disclosed" as of that time. (*Id.*)

It was only after GE's threat to bring the issue to the Court that SSI reconsidered its position and "agree[d] to investigate further and supplement [its] response with any addition [sic] responsive information in SSI's possession by December 11." (Letter from counsel for SSI, P. Robbennolt, to counsel for GE, E. Cowing, dated Nov. 17, 2017 [Ex. 10], at 1.) SSI supplemented its answer on December 11, 2017, and later identified **six additional promises** in supplemental answers on January 25 and February 16, 2018.

The content of SSI's supplemental answers are discussed in detail below. Further, Exhibit 11 hereto summarizes in table form each alleged promise based on the information SSI has provided, including the timing and location of the

alleged promise, the person(s) alleged to have made the promise, the person(s) to whom the promise was allegedly made, the substance of the alleged promise, and the iteration of SSI's answer/supplemental answers to Interrogatory No. 1 in which the promise was identified.

### B. SSI's First Supplemental Answer to Interrogatory No. 1

In its First Supplemental Answer on December 11, 2017,[2] SSI identified *one additional promise* beyond the two promises in SSI's original answer:

- "[O]n or about April 20-26, 2013, outside the main conference hall at the ISMRM meeting in Salt Lake City, Mike Garwood of SSI expressed concern to Jacques Coumans of GE that GE would not commercialize SWIFT. Mr. Coumans put his arm around Mike Garwood and promised him that GE would commercialize SWIFT."

(Plaintiff's First Supplemental Answers to Defendant General Electric Company's Interrogatory No. 1, dated Dec. 11, 2017 [Ex. 12], at 6.)

In addition to identifying this alleged April 2013 promise, SSI provided additional detail regarding the alleged September 2014 promise identified in SSI's original answer to Interrogatory No. 1 (that GE promised it "would commercialize SWIFT"). Included in this detail were a description of the

---

[2] GE is not moving to strike any portion of SSI's First Supplemental Answer.

purported "investments" made by SSI and an allegation, in peculiarly legalistic detail, that GE agreed to commercialize SWIFT "as soon as practicable." (*Id.*)

### C.     SSI's Second Supplemental Answer to Interrogatory No. 1

On January 25, 2018, three weeks before the close of fact discovery and more than six months after GE served Interrogatory No. 1, SSI supplemented its answer for a second time, this time identifying *four new alleged promises*. The full substance of these four new alleged promises identified in SSI's Second Supplemental Answer is set forth in the table submitted as Exhibit 11 hereto.

The four new promises include three additional promises alleged to have been made by promisors previously identified in response to Interrogatory No. 1—*i.e.*, Jacques Coumans, Jason Polzin, and Baldev Ahluwalia—to different combinations of Troy Kopischke, Danny Cunagin, and Mike Garwood. (*See* Plaintiff's Second Supplemental Answers to Defendant General Electric Company's Interrogatory No. 1, dated Jan. 25, 2018 [Ex. 13], at 7-8.) Two of the three newly identified promises are alleged to have occurred at the ISMRM conference in April 2013—the same conference SSI identified in SSI's First Supplemental Answer to Interrogatory No. 1. (*Id.*) The context for the third promise was entirely new: a May 17, 2013, telephone call between Jason Polzin and Baldev Ahluwalia of GE and Troy Kopischke and Danny Cunagin of SSI. (*Id.* at 8.)

The fourth new promise from the Second Supplemental Answer is alleged to have been made by a promisor not previously identified by SSI at all: Michael Harsh, formerly of GE. (*Id.* at 7.) Although the person who allegedly made the promise is new, the context of the alleged Michael Harsh[3] promise—the RSNA conference in late 2011—is the same as one of the alleged promises SSI identified in its original answer to Interrogatory No. 1. (*Id.*; Ex. 2 at 6.)

SSI's Second Supplemental Answer served on January 25, 2017—three weeks before the close of fact discovery and over six months after GE served Interrogatory No. 1—is the first time GE was made aware of SSI's allegations as to the promises identified in that answer. GE therefore moves to strike these four alleged promises.

### D. SSI's Third Supplemental Answer to Interrogatory No. 1

On February 16, 2018, *the same day that fact discovery closed*, SSI supplemented its answer to Interrogatory No. 1 yet again, this time identifying *at least two completely new promises* and apparently providing additional detail regarding a previously identified "September 2014" promise by Jason

---

[3] After SSI identified for the first time on January 25, 2018, a promise alleged to have been made Michael Harsh, GE supplemented its Rule 26(a)(1) Disclosures to identify him as a potential witness. SSI then served upon GE a second notice for the deposition of Mr. Harsh, having previously noticed his deposition then withdrawn the notice. GE's request for a protective order prohibiting SSI from taking Mr. Harsh's deposition pursuant to the second notice of deposition of Mr. Harsh was granted by the Court. (Dkt. 129.)

Polzin and Baldev Ahluwalia of GE to Danny Cunagin of SSI, including that the promise was allegedly made in a phone call between those three individuals, that it occurred on September 12, 2014, and that the "promise" was being made with the backing of then-President-and-CEO of the Global MR Business for GE Healthcare, Richard Hausmann. (*See* Plaintiff's Third Supplemental Answers to Defendant General Electric Company's Interrogatory No. 1, dated Feb. 16, 2018 [Ex. 14], at 10.)

As a general matter, to the extent SSI's description of the September 12, 2014, phone call is simply providing additional detail from the September 2014 promise that SSI had previously identified, GE does not object. GE does, however, object to SSI's eleventh-hour allegation, on the last day of fact discovery, that a promise previously identified as having been made by Jason Polzin and Baldev Ahluwalia was blessed by the then-CEO of the MR business. As to SSI's discussion of the alleged September 12, 2014, promise, GE moves to strike only the following statement: "Mr. Hausmann and his leadership team, including Dr. Polzin and Mr. Ahluwalia, agreed to SSI's demands that GE reconfirm its commitment to commercialize SWIFT." (*Id.* at 10.)

Aside from the further detail regarding the alleged September 12, 2014, promise, SSI's Third Supplemental Answer also provided, for the first time, information related to two additional communications. Given that this

information was provided in response to Interrogatory No. 1, SSI appears to be alleging two new promises. The substance of those two newly identified alleged promises, both of which GE moves to strike, is set forth in the table submitted as Exhibit 11 hereto.

Notably, one of the new alleged promises was purportedly made by Eric Stahre, Mr. Hausmann's successor as President and CEO of GE's Global MR Business, an alleged fact that had purportedly eluded SSI's memory until the last day of fact discovery. (*See* Ex. 14 at 11 ("In or around January 2015, Mr. Kopischke and Mr. Cunagin had a telephone call with Mr. Stahre, Dr. Polzin, and Mr. Ahluwalia, during which Mr. Stahre affirmed GE's agreement to commercialize SWIFT.").)

SSI's Third Supplemental Answer also contains a confusing reference to an apparent promise that had not otherwise been identified by SSI in response to Interrogatory No. 1. Specifically, before describing the alleged content of GE's statements in the August 29, 2014, meeting identified above, SSI describes the comments it purports to have made to GE during that meeting. SSI states:

> [O]n or about August 29, 2014, Troy Kopischke, Danny Cunagin, and Michael Garwood of SSI met with Jason Polzin and Baldev Ahluwalia of GE in Wisconsin. GE_SSI_00029386-29389. During that meeting, Mr. Kopischke, Mr. Cunagin, and Dr. Garwood expressed frustration and disappointment with GE's lack of progress in commercializing SWIFT. They told Dr. Polzin and Mr. Ahluwalia that GE's failure to commercialize SWIFT had damaged Dr. Garwood's career and reputation. They reminded Dr. Polzin and

Mr. Ahluwalia that GE, on several occasions, had promised SSI and Dr. Garwood that it would commercialize SWIFT. *GE had told SSI that it would commercialize SWIFT by implementing SWIFT on its clinical scanners in a "Silent Brain" or neuro application, and that it could do so within a year*. Mr. Kopischke, Mr. Cunagin, and Mr. Garwood expressed frustration that GE had made commitments to SSI that it would commercialize SWIFT, and had repeatedly failed to live up to those commitments. They explained that SSI had been patient with GE, but that their patience had runout. They told Dr. Polzin and Mr. Ahluwalia that, if GE did not reaffirm its agreement to commercialize SWIFT and live up to its commitments to do so as soon as practicable, SSI would take action to enforce the agreement to commercialize.

(*Id.* at 9 (emphasis added).) Nowhere in its previous responses to Interrogatory No. 1 had SSI alleged that GE promised that it could commercialize SWIFT in a 'Silent Brain' or neuro application "within a year." Nor has SSI identified who at GE is alleged to have made this promise. GE therefore moves to strike SSI's late-stage allusion to yet another promise that SSI has not otherwise identified, including alleged timing-of-performance details.

To summarize GE's request as to SSI's Third Supplemental Answer to Interrogatory No. 1, GE respectfully requests that the Court strike:

- SSI's discussion of the two additional alleged GE promises made on August 29, 2014, and in January 2015, respectively (*Id.* at 10, 11);

- SSI's statement that "Mr. Hausmann and his leadership team, including Dr. Polzin and Mr. Ahluwalia, agreed to SSI's demands

that GE reconfirm its commitment to commercialize SWIFT." (*Id.* at 10); and

- The timing-of-performance component, emphasized below, of SSI's statement that "GE had told SSI that it would commercialize SWIFT by implementing SWIFT on its clinical scanners in a 'Silent Brain' or neuro application, ***and that it could do so within a year***." (*Id.* at 9 (emphasis added)).

\* \* \*

In all, across SSI's original answer and three supplemental answers, SSI has alleged that GE made promises to commercialize SWIFT on nine separate occasions. Even after SSI's numerous supplemental answers, it remains unclear whether SSI alleges that each of these nine promises constitutes an enforceable contract, or whether SSI alleges that they are all part of the same alleged post-APA "contract." In either case, the nine alleged promises are set forth in chronological order in the table submitted herewith as Exhibit 11. In Exhibit 11, promises identified for the first time in SSI's January 25, 2018, Second Supplemental Answer are highlighted in yellow. Promises identified for the first time in SSI's February 16, 2018, Third Supplemental Answer are highlighted in orange. It is these highlighted promises that GE moves to strike.

After referencing SSI's late supplementation of its answer to GE's Interrogatory No. 1 during a discovery teleconference with the Court on February 20, 2018, GE requested that SSI withdraw portions of its Second and Third Supplemental Answers. (*See* Letter from counsel for GE, L. Drew, to counsel for SSI, P. Robbennolt, dated Feb. 23, 2018 [Ex. 15].) SSI refused to do so. (*See* Letter from counsel for SSI, P. Robbennolt, to counsel for GE, L. Drew, dated Feb. 28, 2018 [Ex. 16], at 1.) The parties met and conferred on March 8, 2018.

## III. LEGAL STANDARD

Rule 26(e) of the Federal Rules of Civil Procedure imposes upon a party a duty to supplement "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The purpose of discovery is to "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958).

Timeliness under Rule 26(e)(1)(A), including as it relates to the duty to supplement discovery responses, is measured from "the date when the facts are discovered, not some nebulous date when counsel first realized that there was some significance to them." *Longlois v. Stratasys, Inc.*, 88 F. Supp. 3d 1058, 1077

(D. Minn. 2015) (quoting *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975)). "[F]ailure to disclose in a timely manner is equivalent to failure to disclose" for purposes of Rule 37(c)(1). *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998) (affirming sanction for untimely expert disclosure). A party that fails to timely disclose information required by Rule 26(e) is not permitted to use that information as "evidence on a motion, at hearing, or at trial." Fed. R. Civ. P. 37(c)(1).

Rule 16 of the Federal Rules of Civil Procedure "gives the district court the authority to set management deadlines and to impose sanctions for their violation." *Trost*, 162 F.3d at 1008 (citing operative version of Fed. R. Civ. P. 16 at the time of the decision in 1998). Courts must exclude untimely evidence unless the failure to disclose was "either harmless or substantially justified." *Id*. "[T]he offending party has the burden to demonstrate their conduct was substantially justified or harmless." *Baird v. Burlington N. Santa Fe*, Civ. No. 11-1323 (DWF/LIB), 2013 U.S. Dist. LEXIS 189467, at *39 n.8 (D. Minn. Mar. 1, 2013) (quotation omitted).

## IV.    ARGUMENT

The Court should find that SSI's disclosures in its Second and Third Supplemental Answers to GE Interrogatory No. 1 were untimely and that the timing of their disclosure was neither substantially justified nor harmless to GE.

In light of SSI's gamesmanship, as demonstrated by its late-stage disclosures, and the prejudice suffered by GE as a result, the appropriate remedy for SSI's late disclosures is that they be stricken.

### A. SSI's Second and Third Supplemental Answers to Interrogatory No. 1 Were Untimely.

SSI contends that it "supplemented its interrogatory answers in a timely manner, and within the discovery period, pursuant to Fed. R. Civ. P. 26(e)(1)(A)." (Letter from counsel for SSI, P. Robbennolt, to counsel for GE, L. Drew, dated Feb. 28, 2018 [Ex. 16], at 1.) However, SSI's service of its Second and Third Supplemental Answers before the February 16, 2018, close of fact discovery does not in and of itself make them timely. Even where supplemental disclosures are made before the close of fact discovery, they are not "timely" within the meaning of Rule 26(e)(1) if they are not made in a timely manner from "the date when the facts are discovered, not some nebulous date when counsel first realized that there was some significance to them." *Longlois*, 88 F. Supp. 3d at 1077 (finding that a supplemental answer to an interrogatory served three days before the close of fact discovery was not timely). The *Longlois* court made clear that the plaintiff's supplemental disclosure three days before the close of fact discovery "does not render it timely; in fact, [plaintiff's] handling of the matter violated the discovery provisions of both the Scheduling Order and the Local Rules of this District." *Id.*

For the January 25 and February 16, 2018, disclosures to be considered timely, SSI must have only recently discovered the disclosed facts. SSI represented to the Court, during a February 20, 2018, discovery teleconference, that the timing of SSI's Second and Third Supplemental Answers was merely a function of SSI's ongoing efforts to recall details about events that occurred years before this litigation, and that SSI only recently recalled these additional purported promises. Given the timing and detailed content of SSI's eleventh-hour disclosures, SSI's explanation does not withstand scrutiny.

First, SSI is an entity consisting of only two employees: Troy Kopischke and Danny Cunagin. Mr. Kopischke and Mr. Cunagin *are* SSI. They initiated this lawsuit in April 2017 alleging that individuals at GE promised to commercialize the SWIFT technology. With the exception of one alleged promise made by Jacques Coumans to Mike Garwood, one or both of Messrs. Kopischke and Cunagin were purportedly on the receiving end of *every* alleged promise by GE employees to SSI, *i.e.*, eight out of nine alleged promises. Yet SSI waited nine months into this lawsuit, and three weeks before the close of fact discovery, to disclose **four additional promises**, and even more egregiously, until the **last day** of fact discovery to disclose yet more promises.

Second, and even more suspicious, is that SSI was unable to recall these alleged promises at all until the last moment of discovery, when it was suddenly

able to recall not only the promises, but ***considerable and very particular details*** about the promises and the conversations in which the promises are alleged to have been made, as set forth above and in Exhibit 11.[4] Further, it is not credible for SSI to suggest that it only remembered on the last day of fact discovery that former President and CEO of GE's Global MR Business, Richard Hausmann, approved the promise that Dr. Polzin and Mr. Ahluwalia are alleged to have made to Danny Cunagin on September 12, 2014 (Ex. 14 at 10), or that current President and CEO of GE's Global MR Business, Eric Stahre, also "affirmed GE's agreement to commercialize SWIFT" in a January 2015 telephone call (*Id.* at 11). These are not insignificant details. They should have been disclosed to GE months ago as GE repeatedly demanded supplementation of SSI's Answer to Interrogatory No. 1. SSI's selective, last-minute recall of these promises suggests that SSI deliberately withheld this information until the close of fact discovery, despite GE's repeated attempts to elicit all information in SSI's possession.

Third, the manner in which SSI questioned GE witnesses indicates that SSI was well aware of the purported facts it would later allege in its Second and Third Supplemental Answers. For example, SSI questioned Baldev Ahluwalia

---

[4] The vivid detail of SSI's eleventh-hour recollections regarding the six additional alleged promises in its Second and Third Supplemental Answers to Interrogatory No. 1 was further demonstrated in SSI's Rule 30(b)(6) deposition on February 21, 2018.

extensively regarding a meeting held at GE's Waukesha, Wisconsin facility on August 29, 2014. (*See* Ahluwalia Depo. Tr. at 100:16 – 113:9 [Ex. 17[5]].) SSI withheld all of its allegations regarding this meeting until its Third Supplemental Answer, which was served over three weeks later, after Mr. Ahluwalia's deposition and on the last day of fact discovery. SSI thereby deprived Mr. Ahluwalia of the opportunity to be prepared to address SSI's as-yet-undisclosed allegations—allegations directed specifically to him. The only reasonable conclusion is that SSI's timing in supplementing its answer to Interrogatory No. 1 was deliberate. SSI's transparent strategy is trial by ambush, and it should not be condoned.

Finally, several of the nine promises are alleged to have occurred in overlapping contexts. SSI alleges that two of the alleged promises occurred at RSNA in late 2011, and that three more promises occurred at ISMRM in April 2013. (*See* Exhibit 11, at 1-3.) SSI's inability to recall some of these promises until very late in discovery, despite remembering others from the same conferences, is further evidence that SSI's late disclosure was deliberate.

---

[5] Exhibit 17 contains excerpts from Mr. Ahluwalia's deposition transcript. These excerpts contain limited redactions of testimony that contains "Confidential" or "Confidential – Attorneys' Eyes Only" information that is not relevant to the dispute at hand. GE made these limited redactions of irrelevant information to avoid the need to file materials under seal.

Even if the late timing of SSI's disclosures in its Second and Third Supplemental Answers was not deliberate, at a minimum, it is indicative of a lack of diligence and a failure to conduct a reasonable investigation in response to Interrogatory No. 1. *See 3M Innovative Props. Co. v. Tomar Elecs., Inc.*, Civ. No. 05-756 MJD/AJB, 2006 U.S. Dist. LEXIS 80571, at *17 (D. Minn. July 21, 2006) ("In light of the Supreme Court's directive that discovery under the federal rules requires a complete disclosure of relevant facts known to the parties, parties are under a duty to complete a reasonable investigation when presented with the opposing party's interrogatories and document requests. . . . [A] reasonable investigation by a company would include an inquiry of a company's employees for relevant information."). SSI's lack of diligence—giving SSI the benefit of the doubt—is particularly inexcusable in light of GE's motion to dismiss, where GE identified the numerous pieces of information missing from SSI's allegations. (Dkt. 26.) In any case, whether a result of deliberate withholding or a lack of diligence, SSI failed to meet its obligations.

### B. SSI's Untimely Disclosures of New Alleged Post-APA Promises in Its Second and Third Supplemental Answers Have Prejudiced GE.

The new promises identified in SSI's Second and Third Supplemental Answers should be stricken because their disclosure has caused prejudice to GE. These six new promises are alleged to have been made by at least five different current or former employees of GE, *i.e.*, Baldev Ahluwalia, Jason Polzin, Michael

Harsh (formerly of GE), Jacques Coumans (formerly of GE), and Eric Stahre (the current President and CEO of GE's Global MR Business) (as set forth in the table found in Exhibit 11 hereto). Several of these individuals were produced for deposition during the discovery period in this case, including Baldev Ahluwalia on January 25, 2018 and Jason Polzin on February 14, 2018.

When Mr. Ahluwalia was deposed, SSI had not served either its Second or Third Supplemental Answers to Interrogatory No. 1, despite the fact that those two supplemental answers identify **at least three promises Mr. Ahluwalia is alleged to have made** and contain additional detail about even more promises Mr. Ahluwalia is alleged to have made. Similarly, when Dr. Polzin was deposed on February 14, 2018, SSI had not served its Third Supplemental Answer, which contains **at least one promise Dr. Polzin is alleged to have made** and additional detail regarding other promises he was alleged to have made—including that former GE Global MR President and CEO Richard Hausmann had approved a September 12, 2014, promise Dr. Polzin and Mr. Ahluwalia are alleged to have made. Perhaps most notably, the Third Supplemental Answer identified for the first time, after Dr. Polzin's and Mr. Ahluwalia's depositions, that current GE Global MR President and CEO Eric Stahre made a promise that GE would commercialize SWIFT during a January 2015 phone call in which Dr. Polzin and Mr. Ahluwalia were participants. (Ex. 14 at 11.)

The timing of SSI's service of its Second and Third Supplemental Answers in relation to the depositions of Mr. Ahluwalia and Dr. Polzin—specifically, serving the Second Supplemental Answer at approximately 10:00 a.m. the morning of Mr. Ahluwalia's January 25, 2018, deposition, and serving the Third Supplemental Answer two days after Dr. Polzin's February 14, 2018, deposition—suggests that SSI was withholding information so that GE's witnesses would not have the ability to prepare to respond to SSI's allegations, thus maintaining the element of surprise.

SSI's gamesmanship and late disclosures thus allowed SSI to take the depositions of two key GE witnesses (witnesses alleged to have made at least four promises between them) without those witnesses even having the benefit of knowing the full scope of SSI's allegations against them. Dr. Polzin and Mr. Ahluwalia could hardly have responded to or rebutted SSI allegations that SSI was holding until the last minute.

The significant and specific impact of SSI's untimely disclosures is apparent in Mr. Ahluwalia's and Dr. Polzin's deposition testimony. For example, in Mr. Ahluwalia's January 25, 2018, deposition, SSI asked numerous questions regarding Mr. Ahluwalia's communications with SSI, including regarding discussions that occurred in the August 29, 2014, meeting (which was not identified until the Third Supplemental Answer to Interrogatory No. 1, served

February 16, 2018). (*See* Ahluwalia Depo. Tr. at 100:16 – 113:9 [Ex. 17].) Without the benefit of SSI's allegations, Mr. Ahluwalia was forced to testify that he could not recall what was discussed at the August 29, 2014, meeting versus other discussions with SSI. (*See, e.g., id.* at 102:19-21; 103:2-4; 103:9-13; 103:21 – 104:1.) Of course, Mr. Ahluwalia acknowledged that he had "dozens of communications" with SSI in the period following execution of the APA. (Ex. 17 at 86:6 – 87:12.) Without knowledge of SSI's allegations, Mr. Ahluwalia could not possibly have been prepared to testify regarding the specific content of all of these communications. Had SSI disclosed its allegations as to the August 29 meeting in a timely manner, Mr. Ahluwalia could have reviewed relevant email and other documents to refresh his recollection as to this specific meeting. Properly prepared, he could have testified more fully and more definitively. Instead, Mr. Ahluwalia's testimony contains several instances of him testifying that he does not know about various pieces of information. If these late-disclosed promises are not stricken, at trial, SSI will be able to pit its witnesses' vivid recollection of that meeting against Mr. Ahluwalia's shaky recollection at the time of his deposition and impugn Mr. Ahluwalia's credibility.

Similarly, SSI elicited testimony from Mr. Ahluwalia regarding an email Mr. Ahluwalia sent on October 6, 2014, in which he wrote "I will help set up a meeting with Eric Stahre, new CEO of MR business, and Mike Garwood in the

near future to provide a background/technology potential." (Ex. 17 at 139:2-7.)
When asked whether he, in fact, set up such a meeting, Mr. Ahluwalia testified,
"I don't know." (*Id.*) Mr. Ahluwalia would have no reason to recall whether he
set up the specific meeting referenced in this email ***unless*** he was aware of SSI's
allegation—disclosed by SSI for the first time after Mr. Ahluwalia's deposition
and on the last day of fact discovery—that there was a call in January 2015 with
Eric Stahre, Jason Polzin, and Mr. Ahluwalia of GE, and SSI, in which Mr. Stahre
allegedly affirmed some previous promise to commercialize SWIFT. Had SSI
disclosed its allegations as to the January 2015 call in a timely manner,
Mr. Ahluwalia could have reviewed relevant email and other documents to
refresh his recollection as to this call. This information would have been easily
verifiable had SSI's allegations regarding Mr. Stahre been known to
Mr. Ahluwalia. He would have been prepared to substantively answer the
question posed to him, and his answer likely would have been different.
Specifically, he could have addressed whether such a call took place, and he
could have been prepared to testify regarding the content of any such call. SSI
now has the opportunity at trial to cross-examine Mr. Ahluwalia and challenge
his credibility based on incomplete deposition testimony, which was only
incomplete because of SSI's deliberate withholding of information.

SSI's strategy of deposing GE's witnesses, asking about specific conversations or meetings on specific days—which GE's witnesses would understandably not have spent time trying to recall—and then later disclosing SSI's very specific version of events in those conversations or meetings, is unfairly prejudicial to GE.

### C. Striking SSI's Untimely Disclosures Is the Appropriate Remedy.

SSI's untimely disclosures were not harmless, and striking them is the appropriate and warranted remedy. The egregious nature of SSI's late supplementation should be justification enough. "A party's failure to supplement answers to interrogatories in a timely fashion can be grounds for exclusion of the undisclosed information." *B-K Lighting, Inc. v. Vision3 Lighting*, 930 F. Supp. 2d 1102, 1136 (C.D. Cal. 2013) (citing *Woods v. Deangelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012)). *See also Hancock v. Hobbs*, 967 F.2d 462, 468 (11th Cir. 1992) (excluding expert affidavit where party failed to "make a seasonable supplementation" of interrogatory answer to identify expert by waiting until five months after retaining him). Rule 26(e) "prohibits parties who are aware of their deficient response from 'hold[ing] back material items and disclos[ing] them at the last moment.'" *Woods*, 692 F.3d at 1282 (quoting 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2049.1 (3d ed. 2011)) (alterations in original). "[F]ailure to disclose in a timely manner is

equivalent to failure to disclose" for purposes of Rule 37(c)(1). *Trost v. Trek Bicycle Corp.*, 162 F.3d 1004, 1008 (8th Cir. 1998).

In extreme cases of deliberate withholding of evidence, particularly where untimely disclosure occurred after the close of fact discovery, courts have dismissed parties' claims entirely. *See, e.g., Laukus v. Rio Brands, Inc.*, 292 F.R.D. 485, 504 (N.D. Ohio 2013) (dismissing with prejudice plaintiff's claims based on late disclosures and various forms of discovery misconduct by plaintiff and his counsel). GE is not requesting dismissal of SSI's claims, but *Laukus* is nonetheless instructive. In *Laukus*, the court determined that the plaintiff had been "playing a calculated game of 'hide the ball' since the beginning of the litigation, and ha[d] been using a variety of ploys, including misdirection and temporary amnesia, to cover his tracks." *Id.* For example, because plaintiff was able to recall "substantial details" regarding certain discussions relevant to his claims, the court found it "incredible" that plaintiff did not remember other basic facts. *Id.* at 506. Ultimately, the court was "left with the unavoidable conclusion that plaintiff intentionally and willfully withheld documents in an effort to thwart defendants' ability to discover material evidence bearing on plaintiff's claims." *Id.* at 505.

The conduct in *Laukus* was admittedly more extreme than SSI's, and even though GE does not seek dismissal of SSI's claims, SSI's conduct warrants a sanction, particularly because as discussed above, the circumstances of SSI's late

disclosures suggest that SSI "intentionally and willfully withheld" information (as opposed to documents, as in *Laukus*) "in an effort to thwart [GE's] ability to discover material evidence bearing on [SSI's] claims." The appropriate sanction in this case, under Rules 26 and 37, and the Court's inherent powers, is to exclude the late-disclosed promises.

### D. The Remedy of Striking the New Promises Identified in SSI's Second and Third Supplemental Answers Is Not Unduly Harsh.

The remedy of striking this evidence and barring SSI from using it would not be unduly harsh because SSI has made several allegations about post-APA promises that are not impacted by this motion. While GE vigorously disputes the content of those additional allegations, GE does not seek at this stage to prevent SSI from pursuing them.

### E. GE Requests in the Alternative that It Be Granted Leave to Supplement Its Initial Disclosures.

Should the Court decline to strike the portion of SSI's Third Supplemental Answer that identifies Mr. Stahre, GE respectfully moves in the alternative for leave to add Mr. Stahre to its Rule 26(a)(1) Disclosures. GE had no reason to include Mr. Stahre in its Rule 26(a)(1) Disclosures before SSI's identification of him on the last day of fact discovery.

## V. CONCLUSION

For the foregoing reasons, GE respectfully requests that SSI's untimely disclosures in its Second and Third Supplemental Answers, as set forth in detail

herein, be stricken and that SSI be barred from relying on this content, consistent

with the Proposed Order submitted herewith.

Dated: March 27, 2018                    Respectfully submitted,

By: */s/ Marla R. Butler*_____
    Marla R. Butler (0397937)
    Logan Drew (0389449)
    François O. Ecclesiaste (0397444)
    Robins Kaplan LLP
    2800 LaSalle Plaza
    800 LaSalle Avenue
    Minneapolis, MN 55402
    T: 612–349–8500
    F: 612–339–4181
    mbutler@robinskaplan.com
    ldrew@robinskaplan.com
    fecclesiaste@robinskaplan.com

    *Attorneys for Defendant General*
    *Electric Company*