UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Steady State Imaging, LLC<br><br>                    Plaintiff,<br><br>v.<br><br>General Electric Company<br><br>                    Defendant. | Civil No. 0:17-cv-01048-JRT-KMM<br><br>**PLAINTIFF STEADY STATE IMAGING, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE REPORT OF DONALD A. GOROWSKY** |

Defendant General Electric Company ("GE") seeks to exclude the testimony of Plaintiff Steady State Imaging, LLC's ("SSI") damages expert, Donald A. Gorowsky, on five separate grounds. Three of those grounds are based on legal issues that are unrelated to the substance and details of Mr. Gorowsky's opinions: (1) that SSI cannot, as a matter of law, prove causation of its claimed damages for breach of the parties' Asset Purchase Agreement ("APA"); (2) that SSI is not legally entitled to recover expectation damages on its promissory estoppel claim; and (3) that SSI is not legally entitled to recover damages under its alternate claim to "lost opportunity" damages. GE has also moved for summary judgment on these same three grounds. In each case, the law supports SSI's damages claim, and the Court should deny both this motion and GE's summary judgment motion.

The fourth ground for GE's motion is its allegation that Mr. Gorowsky erroneously based his damages calculation on the royalty provisions of the APA; this argument was also presented in GE's summary judgment motion. Because the royalty

provisions of the APA remain in force and effect between the parties, they dictate the royalty payments that GE would owe to SSI on the sale of SWIFT-based products, regardless of the existence of a separate, independent agreement requiring GE to commercialize SWIFT-based products.  Accordingly, the Court should deny this portion of GE's motion and summary judgment motion as well.

Finally, GE seeks to exclude Mr. Gorowsky's "methodology for calculating damages by replacing every silent scan sale with a SWIFT sale," asserting that Mr. Gorowsky bases his opinions on unwarranted assumptions.  As set forth in his report, however, Mr. Gorowsky does in fact explain the basis for his conclusions, and those bases provide sufficient support for Mr. Gorowsky's opinions.  Because the factual basis of an expert's opinion goes to the credibility of the testimony, not to admissibility, the Court should deny GE's motion to exclude Mr. Gorowsky's opinions in its entirety.

I.      **LEGAL STANDARDS**

The trial court is granted broad discretion to act as a "gatekeeper" in determining whether expert testimony is admissible.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 142 (1999).  Expert testimony should be admitted if it is based on sufficient facts, it is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.  *See* Fed. R. Evid. 702.  Indeed, while "[e]xpert testimony must rest on reliable principles and methods, the 'relevant reliability concerns may focus upon personal knowledge or experience' rather than scientific foundation." *U.S. v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (quoting *Kumho Tire*, 526 U.S. at 150).

There are three basic requirements for the admissibility of expert opinion testimony. First, under Rule 702, the testimony must be (a) useful to the finder of fact in deciding a fact issue and (b) based on scientific, technical, or other specialized knowledge. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) ("This is the basic rule of relevancy."). Second, "the proposed witness must be qualified to assist the finder of fact." *Id.* Third, the "proposed evidence must be reliable or trustworthy in an evidentiary sense." *Id.*

"As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929–30 (8th Cir. 2001). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993). "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758 (8th Cir. 2006).

## II. THE COURT SHOULD REJECT GE'S OBJECTIONS TO MR. GOROWSKY'S TESTIMONY THAT ARE BASED ON THE LEGAL BASIS FOR SSI'S CLAIMS

### A. The Court Should Not Exclude Mr. Gorowsky's Opinions Regarding SSI's Damages Under the APA, Because SSI Can Prove Causation

GE asks the Court to exclude Mr. Gorowsky's opinions regarding SSI's damages for GE's breach of the APA, claiming that SSI cannot prove causation as a matter of law. Dkt. 305 ("GE Memo.") at 7-12. Mr. Gorowsky assumes liability in this matter, as damages experts are permitted to do. GE's motion thus amounts to a motion for summary judgment on SSI's damages claim under Count I of its Amended Complaint. In fact, GE moved for summary judgment on this same basis. SSI responded to GE's motion in its summary judgment response, but will restate that response here so the record on this motion is complete.

A party claiming breach of contract is entitled to recover its expectation damages: the damages that would place it in the position it would have been in had the breaching party complied with the terms of the contract. *See Logan v. Norwest Bank Minn., N.A.*, 603 N.W.2d 659, 663 (Minn. Ct. App. 1999). In this case, GE's breach was its failure to create a SWIFT ATD to implement and evaluate the SWIFT technology for incorporation into GE's commercial scanners. SSI contends that if GE had not breached the contract and had proceeded to implement and evaluate SWIFT in an ATD, it would have decided to proceed with an NPI and would have commercialized SWIFT in the form of a "silent brain" neuro application.

4

The Court should reject GE's argument that SSI cannot prove causation because the basis for the damages claim—GE's prospective commercialization of a SWIFT product—is too remote (through "several links in the causal chain")—from GE's breach. This argument misapprehends Minnesota law on causation breach of contract damages, which is not surprising given GE does not cite a single case on causation in breach of contract cases. GE Memo. at 7-12.[1]

To prove causation of expectation damages for breach of contract in Minnesota, the plaintiff need not prove that it would have recovered the damages sought "but for" the defendant's breach. *Valley Paving, Inc. v. Stanley Consultants, Inc.*, Civ. No. A15-1321, 2016 WL 2615956, *7 (Minn. Ct. App. May 9, 2016). Unlike professional negligence and other tort claims, breach of contract expectation damages do not require "but for causation" proof. *Id.* The standard in such cases "is different from, and less stringent than, the 'but for' standard required in professional-negligence claims." *Id.* To prove causation and recover damages, the plaintiff need only prove damages scenarios that are "reasonable" in light of the evidence. *Id.* at *8.

*Valley Paving* demonstrates that a damages claim with "several links in the causal chain" is acceptable so long as the plaintiff proves that the scenarios it presents for

---

[1] GE cites two cases for the proposition that a damages expert's testimony is irrelevant if the plaintiff cannot prove causation, but neither case is applicable to the causation issue here. Neither case relates to a breach of contract claim—both are for product disparagement—and neither applies Minnesota law. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 75 F.Supp.2d 235 (S.D. N.Y. 1999), *aff'd*, 314 F.3d 48 (2d Cir. 2002); *MapInfo Corp. v. Spatial Re-Engineering Consultants,* No. 02-CV-1008 (DRH), 2006 U.S. Dist. LEXIS 70408 (N.D.N.Y. Sept. 28, 2006).

5

damages is reasonable. In *Valley Paving*, the Plaintiff entered into a guaranteed maximum price highway improvement contract with the state. Under that agreement, the parties agree to a contract price based on the contractor's bid, and the contractor was not entitled to additional payment under the contract even if the ultimate cost substantially exceeded the contract price. *Id.* at *1. The Plaintiff submitted a bid and was awarded the contract after seeking assistance from the Defendant in providing estimates for the costs of the project, so as to ensure that its bid was realistic. *Id.*

When the work was ultimately more expensive than the bid, the Plaintiff blamed the Defendant for making errors in its cost estimates and for failing to inform it of cost overruns in a timely manner. The Plaintiff brought suit alleging, among other claims, that defendant breached the parties' contract. *Id.* at *2. To support its damages claim, the Plaintiff alleged that if the defendant had informed it of the cost overruns promptly, the plaintiff would likely have been able to recoup some or all of the cost overruns by seeking a price adjustment from the state or by asking subcontractors to reduce their prices. *Id.* at *7. The trial court dismissed the plaintiff's claim because the plaintiff could not prove "but for" causation of its claimed damages. *Id.* at *2. In particular, the trial court held that there was no guarantee that the plaintiff would have been able to recoup the cost overruns even if the defendant had not breached the parties' contract. The state had no obligation to make any additional payments under the contract, and the plaintiff's subcontractors may not have been willing to work with the plaintiff to reduce costs.

The court of appeals reversed, holding that a plaintiff asserting breach of contract need not prove "but for" causation of damages. *Id*. at *7. The plaintiff's damages claims were viable under Minnesota law because its damages scenarios were "reasonable" in light of the evidence, even though there was no guarantee that the plaintiff would have been able to recoup its cost overruns. *Id.* at *8. The evidence showed that it was possible that the state would have been willing to make additional payments to the plaintiff, and it was also possible that subcontractors would have been willing to work with the plaintiff to reduce costs. *Id.* Although it was not possible to determine the exact amount the plaintiff would have been able to recoup, it was "not required to prove the amount of damages to a certainty." *Id.* (citations omitted). The plaintiff "need only provide proof of a reasonable basis on which damages may be estimated. And the amount of damages is generally a question of fact for the jury." *Id.* at *8 (citations omitted); *see also Pharmacy, Inc. v. American Pharmaceutical Partners, Inc.*, 511 F.Supp.2d 324, 344 (E.D. N.Y. 2007) (allegations of causation by 'other factors' are fact issues).

*Valley Paving* is directly on point here. The heart of GE's motion on causation is the argument that, even if GE had created a SWIFT ATD, it may not have implemented SWIFT in a commercial product, and therefore may not have made the sales that provide the basis for GE's lost royalties damages claim. Under Minnesota law, however, SSI need not prove that GE was guaranteed to commercialize SWIFT if it had created a SWIFT ATD. As *Valley Paving* explains, SSI need only show that its damages scenario—that GE would have commercialized SWIFT had it created and conducted a SWIFT ATD—is reasonable.

The evidence confirms that SSI's damages scenario is reasonable. SSI will present at trial expert testimony that GE would have implemented SWIFT on its scanners had it conducted an ATD; all of the hardware and technology was known and available. *See*, *e.g.*, Exhibit R1 to the October 15, 2018, Declaration of Paul J. Robbennolt ("Robbennolt Dec.")[2] at 11-14; Exhibit R28 at 10-17. SSI will also present evidence that SWIFT has been implemented successfully on MRI scanners, including CMRR's own implementation on Varian and Siemens scanners. Exhibit R1 at 14. SSI will also present evidence from GE documents and witnesses demonstrating that GE knew the hardware requirements for SWIFT and was nevertheless confident that it could implement SWIFT on its scanners and in its commercial products. *See*, *e.g.*, Exhibit R6 at SSI018965 ███ ███████████████████████████████ Exhibit R29 (SSI document reporting Dr. Coumans' confidence that GE could implement SWIFT on its scanners ██████████████████████████████████████ ████); Exhibit R3 at 86 (████████████████████████ ██████████████). SSI will present evidence that GE would have been motivated to commercialize SWIFT based on its silent capabilities and its advantages over RUFIS. *See*, *e.g.*, Exhibit R1 at 6-11; Exhibit R28 at 17-21.

There is also evidence to support the specific damages scenario presented by SSI. Mr. Gorowsky opines that if GE had commercialized SWIFT, it would have been motivated to offer it instead of its RUFIS-based Silent Scan product. *See* Exhibit 33 to

---

[2] All Exhibits attached to the Robbennolt Decl. are designated herein as "Exhibit R_".

8

the September 10, 2018 Declaration of Marla R. Butler in Support of Defendant General Electric Company's Motion for Summary Judgment ("Butler Dec."), Dkt. 262 ("Gorowsky Report") at 16-17.  Mr. Gorowsky bases his opinions on expert testimony that SWIFT is likely to provide better images than RUFIS, and is capable of more applications than RUFIS.  *Id.* at 8-9.  In other words, SWIFT offers everything that RUFIS offers, as well as features that RUFIS does not offer; therefore, there would be no reason for GE to offer both RUFIS and SWIFT-based products.  *See id.*  Furthermore, there are costs associated with offering two overlapping products that GE would be motivated to eliminate by not introducing and/or discontinuing its RUFIS-based product.  *See id*.

SSI has not taken the position that the ATD requirement is a "de facto agreement to commercialize."  The Court has found that the APA does not **require** GE to commercialize SWIFT, but that is the wrong question in the context of damages.  To determine causation of damages, the jury must decide whether GE **would have** commercialized SWIFT if it had complied with the APA and created and conducted a SWIFT ATD.  SSI will present evidence at trial, including that outlined above, from which a reasonable jury could conclude that GE would have commercialized had it created an ATD with respect to SWIFT.

Presumably because it misapprehended the law of causation of breach of contract damages, GE did not discuss the evidence on causation apart from citing the APA provision ████████████████████████████████████████████" and providing a short list – in conclusory fashion – of other possible risks to GE's

commercialization efforts. GE Memo. at 15-16. SSI has met its burden on summary judgment of demonstrating that its damages scenario is reasonable and that there are genuine issues of material fact regarding causation of damages that require denial of GE's motion for summary judgment. Accordingly, the Court should deny GE's motion for summary judgment and permit Mr. Gorowsky to testify as to SSI's expectation damages based on GE's breach of the APA.

### B. The Court Should Not Exclude Mr. Gorowsky's Opinions Regarding SSI's Expectation Damages on its Promissory Estoppel Claim

GE seeks to exclude Mr. Gorowsky's testimony regarding SSI's expectation damages on its promissory estoppel claim, contending that SSI cannot recover its expectation damages for promissory estoppel as a matter of law. GE Memo. at 24-25. This basis, like the last, does not address the substance or details of Mr. Gorowsky's analysis and opinions. This issue was also presented in GE's motion for summary judgment, and SSI responded to it in connection with that motion.

There is no basis in the law for GE's motion to dismiss SSI's promissory estoppel claim on the ground that SSI is essentially limited as a matter of law to reliance damages. Minnesota law, following the restatement, allows plaintiffs who assert promissory estoppel to claim any damages that are available for breach of contract claims, including expectation damages. *See Chester Creek Techs., Inc. v. Kessler*, Civ. No. A06-505, 2007 WL 3589, *4-5 (Minn. Ct. App. Jan. 2, 2007) ("remedies available under contract law are also available under the doctrine of promissory estoppel;" "expectation damages are a permissible remedy in promissory-estoppel claims"); *Deli v. University of Minnesota*,

10

578 N.W.2d 779, 782 (Minn. Ct. App. 1998) (promissory estoppel "sounds in contract," and promissory estoppel claims are entitled to the "remedy prescribed for breach of contract") (citations omitted); *Cohen v. Cowles Media Co.*, 479 N.W.2d 387 (Minn. 1992). Expectation damages (or other breach of contract damages theories) are the rule, not the exception. Minnesota case law, including the cases cited by GE, make clear that the "remedies available under contract law are also available under the doctrine of promissory estoppel." *Chester Creek*, 2007 WL 3589, *4. The courts retain the authority to limit the plaintiff's relief "as justice requires." *Walser v. Toyota Motor Sales, U.S.A., Inc.*, 43 F.3d 396, 410 (8th Cir. 1994). Thus, SSI's claim for damages is good under Minnesota law, and GE has not made a showing sufficient to justify limiting its claim as a matter of law on summary judgment. Accordingly, Mr. Gorowsky's testimony is relevant and the Court should deny GE's motion to exclude it.

C. **The Court Should Not Exclude Evidence Regarding SSI's Alternate Claim for "Lost Opportunity" Damages.**

GE moves to exclude Mr. Gorowsky's testimony on SSI's alternative claim for its "lost opportunity" damages under its breach of the APA claim. GE Memo. at 25-26. Although Mr. Gorowsky's report mentioned SSI's alternative damages claim, SSI does not expect that Mr. Gorowsky will offer expert opinion testimony regarding that claim at trial; instead, Troy Kopischke and Danny Cunagin, the fact witnesses who prepared the valuation of SSI's prospective license agreement with Siemens at the time of the negotiations, will testify regarding those valuations. Accordingly, SSI respectfully submits that this portion of GE's motion is moot. Nevertheless, so that the record is

11

complete in the papers for this motion, SSI will present here the basis for its entitlement to "lost opportunity damages."

Lost opportunity damages are form of reliance damages, which seek to reimburse the plaintiff "for loss caused by reliance on the contract by being put in as good a position as [the plaintiff] would have been in had the contract not been made." *Designer Direct, Inc. v. Deforest Redevelopment Authority*, 368 F.3d 751, 752 (7th Cir. 2004). Minnesota law recognizes reliance damages as an alternative to expectation damages for breach of contract. *Logan*, 603 N.W.2d at 663.

Although reliance damages may include the plaintiff's out-of-pocket expenses, a "plaintiff may also seek reliance damages under a theory of lost opportunity." *Designer Direct*, 368 F.3d at 752. These damages may include the loss of ability to enter into a different contract. *Id.*; *see also Shelley v. Trafalgar House Public Ltd. Co.*, 977 F. Supp. 95, 99 (D. P.R. 1997) (reliance damages for *culpa in contrahendo* claim include the loss of opportunity to enter into another valid contract). To prove such damages, the plaintiff must identify the party or parties with whom it would have contracted and show that "it was likely that a contract would have been entered into but for" the contract with the Defendant. *Id.*

GE's legal objection to SSI's alternative damages theory misapprehends the claim. It is true that all of SSI's claims "emanate from conduct occurring after the APA." Because of those breaches of contract, SSI seeks to be put in the position it would have been in had the parties' never entered into the APA. In that circumstance, SSI would have taken its next best alternative—a license agreement with Siemens. *See* Declaration

12

of Troy Kopischke in Opposition to Defendant's Motion for Summary Judgment, dated October 15, 2018 ("Kopischke Dec.") at ¶24 (SSI would have reached a license agreement with Siemens had it not agreed to the APA). The evidence supports this damages claim. Siemens made an offer to SSI that SSI could have accepted. *Id.* at ¶21 and Exhibit K7. SSI only rejected Siemens' offer so that it could enter into the APA with GE. *Id.* at ¶21. The measure of SSI's claimed damages is the value of its alternative prospective license agreement with Siemens. During negotiations, SSI estimated Siemens' likely sales of SWIFT-based products. *See Id.* at ¶22 and Exhibit K8. Using the royalty rates included in Siemens' offer, SSI and the jury can determine the likely value of the Siemens agreement that SSI forewent in favor of the GE relationship. Although GE may critique the evidence as "self-serving," that objection goes to the weight of the evidence, not the admissibility, and does not warrant summary judgment dismissal of SSI's alternative damages claim.

### III. THE COURT SHOULD NOT EXCLUDE MR. GOROWSKY'S CALCULATION OF SSI'S EXPECTATION DAMAGES BASED ON THE ROYALTY PROVISIONS OF THE APA

GE seeks to exclude Mr. Gorowsky's testimony regarding SSI's expectation damages, claiming he applies the royalty provisions of the APA to the parties' post-APA agreements. There is no merit to GE's argument that the royalty provisions of the APA would be inapplicable to sales of GE SWIFT-based products simply because the sale was made after the parties entered into a subsequent agreement to commercialize. The post-APA agreements that SSI seeks to enforce do not address royalties for the sale of SWIFT-based products, nor is it necessary that they do so. The post-APA contracts do

13

not terminate or nullify the royalty provisions of the APA, so they are still applicable and would require GE to pay a royalty to SSI for any covered sales of SWIFT-based products. The "separate and distinct" nature of the post-APA contracts does not affect the existence of enforceability of the APA including the royalty provisions of the APA. Accordingly, the Court should deny GE's motion to exclude Mr. Gorowsky's testimony on this point.

## IV. The Court Should Not Exclude Mr. Gorowsky's Damages Calculation Because It is Based on a Sufficient Factual Basis

Finally, GE raises one objection to the substance and details of Mr. Gorowsky's expert testimony. GE Memo. at 13-23. GE seeks to exclude Mr. Gorowsky's damages calculation based on objections to the factual basis for that testimony. However, as shown below, Mr. Gorowsky's opinions and his damages calculation are based on facts and analysis that are set forth in his expert report. While GE may not agree with Mr. Gorowsky, its objections to the factual basis for his opinions go to the credibility of his testimony, not to its admissibility. *Hammes v. Yamaha Motor Corp. U.S.A.*, 2006 WL 1195907, at *4 (D. Minn. May 4, 2006) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus.*, 401 F.3d 901, 916 (8th Cir. 2005)). Indeed, questions regarding the factual underpinnings of an expert's opinions generally affect the weight and credibility of the expert's testimony, but not its admissibility. *See Structural Polymer Grp., Ltd. v. Zoltek Corp.*, 543 F.3d 987, 997 (8th Cir. 2008).

A.  **Mr. Gorowsky's Opinion that GE's Sales of SWIFT-Based Products Would Have Replaced RUFIS-Based Sales is Based on a Sufficient Factual Foundation**

As GE correctly notes, Mr. Gorowsky opines that if GE had commercialized SWIFT-based products, it would have replaced any existing RUFIS-based product with that SWIFT-based product. By this analysis, if GE had commercialized SWIFT before RUFIS, it would not have proceeded to commercialize RUFIS. If GE had commercialized SWIFT-based products after it had introduced RUFIS-based products, it would have replaced its RUFIS-based products with SWIFT-based products. Whatever the timing of GE's commercialization of SWIFT—a matter that Mr. Gorowsky leaves to the jury—Mr. Gorowsky's analysis allows him to offer testimony regarding the calculation of SSI's damages:



Gorowsky Report at 21.

Contrary to GE's assertions, Mr. Gorowsky's opinion that GE's SWIFT-based products sales would have replaced its RUFIS-based product sales is not unsupported *ipse dixit* testimony. Mr. Gorowsky's opinions are based on the expert testimony of SSI's technical experts regarding the relative features and advantages of SWIFT and RUFIS and his own expertise and analysis.

As Mr. Gorowsky notes, he relies on the testimony of SSI's technical expert witnesses regarding the capabilities and features of both SWIFT and RUFIS. Gorowsky Report at 8-9. As Mr. Gorowsky correctly states, SSI's technical experts have opined that SWIFT has several diagnostic and performance advantages over SWIFT, including the availability of features, such as silent functional MRI, that GE has expressed an interest in offering. *Id.* Furthermore, RUFIS does not have any diagnostic or performance advantages over SWIFT. Accordingly, Mr. Gorowsky has opined, based on that testimony and his own expertise, that GE would be motivated to replace its RUFIS-based product with SWIFT-based products. There would be no rational economic reason for GE to offer two products intended for the same purpose, when one of those products is inferior in every way to the other, except cost, and there is no basis to conclude that SWIFT-based products would be more expensive than RUFIS-based products. In fact, as Mr. Gorowsky opines, it would be economically inefficient for GE to offer both SWIFT-based and RUFIS-based products at the same time under these circumstances. *See* Gorowsky Report at 16-17. There are costs associated with having multiple product lines, such as marketing and manufacturing costs. There is not an economic justification for bearing those additional costs for a RUFIS-based product if those RUFIS-based products do not have any advantages over SWIFT-based products. There is no evidence that supports a conclusion that RUFIS-based products have such an advantage over SWIFT-based products.

The same factual basis supports Mr. Gorwosky's opinions that the market demand for SWIFT-based products would be equal to, if not greater than, the demand for RUFIS-

16

based products. Gorowsky Report at 16-17. Because SWIFT offers all of the capabilities and features that RUFIS offers, there cannot be a demand driver for RUFIS that would not also drive demand for SWIFT (again, with the exception of price, regarding which there is no evidence available). In fact, because SWIFT has better capabilities and more features than RUFIS, it is likely that the market demand for SWIFT-based products would be greater than that for RUFIS-based products. *See id*.

Mr. Gorowsky's opinions are supported by a sufficient factual basis. Therefore, GEs objections go to the credibility, rather than the admissibility, of Mr. Gorowsky's testimony, and can be addressed through cross-examination. The Court should deny GE's motion to exclude his testimony.

> **B.    Mr. Gorowsky's Does Not Offer the Opinion that GE Would have Commercialized SWIFT by The Third Quarter of 2013**

As noted above, Mr. Gorowsky is not a technical expert and does not offer an opinion regarding the date on which GE would have commercialized SWIFT-based products had it chosen to do so. Mr. Gorowsky has testified to the calculation of SSI's damages, and his report has provided the tools to calculate those damages based on the date of commercialization determined by the trier of fact. Thus, there is no basis to exclude testimony from Mr. Gorowsky regarding the start date of any commercialization of SWIFT; he is not offering such testimony.

There is, however, sufficient evidence in the record to establish that GE could have commercialized SWIFT by the third quarter of 2013 had it chosen to do so. During the negotiations over the APA, Jacques Coumans, the General Manager of GE's Premium

MR products, assured SSI that ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ (the same meeting where GE ultimately did announce its Silent Scan technology).  *See* Exhibit R29.  Notably, when GE planned its SWIFT ATD—an ATD it never created—it ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ *See* Exhibit 14 to Butler Dec., Dkt. 241 ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌ ).  Thus, even GE's own internal documents provide a basis to conclude that "SWIFT would have been ready for commercial sale by Q3 2013."

    C.    <u>**The Court Should not Exclude Mr. Gorowsky's Testimony Regarding SSI's Future Damages**</u>

Mr. Gorowsky's damages calculation posits a scenario in which GE's sales of SWIFT-based products continue through 2026.  His report establishes that his testimony is based on a sufficient factual basis.  In particular, Mr. Gorowsky notes the apparent demand for silent MR products.  Gorowsky Report at 16.  He describes the growth rate for GE's Silent Scan product, which continues to increase.  He also cites the testimony of SSI's technical experts, who have opined that SWIFT offers all of the features and capabilities of RUFIS/Silent Scan, and in addition offers performance and diagnostic advantages over RUFIS.  *Id.* at  8-9.  That evidence and analysis supports Mr. Gorowsky's conclusion that demand for SWIFT-based products would be high, and GE would have incentive to continue to sell such products into the foreseeable future.

GE objects to Mr. Gorowsky's testimony because "GE might develop its own alternative technologies for *e.g.*, fMRI or DCE-MRI," but this is no more than attorney argument and baseless speculation: GE does not even identify such technologies, much less cite to any evidence that such alternate technologies are possible. For any expert to assume that GE would discontinue sales of a SWIFT-based product in favor of an unidentified technology with no evidentiary support would be truly devoid of factual basis.

Mr. Gorowsky's testimony is supported by a reasonable factual basis. SSI's damages claim is not "remote, speculative, or conjectural." *Marvin Lumber*, 401 F.3d at 914. GE's objections go to the weight of Mr. Gorowsky's testimony, rather than to its admissibility. Therefore, the Court should deny GE's motion to exclude in its entirety.

## CONCLUSION

For the reasons stated herein, SSI respectfully requests the Court deny in its entirety Defendant's motion to exclude the opinions of Mr. Gorowsky.

Dated:  October 15, 2018                **PADMANABHAN & DAWSON, P.L.L.C.**

By:  <u>s/Paul J. Robbennolt</u>
    Devan V. Padmanabhan #0240126
    Paul J. Robbennolt #240497
    Britta S. Loftus #388020
45 South 7th Street
Suite 2315
Minneapolis, MN 55402
Telephone:  (612) 444-3601
Facsimile:  (612) 444-3195
devan@paddalawgroup.com
paul@paddalawgroup.com
britta@paddalawgroup.com

***ATTORNEYS FOR PLAINTIFF STEADY STATE IMAGING, LLC***