UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

STEADY STATE IMAGING, LLC,

                Plaintiff,        Civil No. 17-1048 (JRT/KMM)

v.

GENERAL ELECTRIC COMPANY,        **ORDER ON MOTIONS IN LIMINE**

                Defendant.

Devan V. Padmanabhan, Paul J. Robbennolt, Britta S. Loftus, and Michelle E. Dawson, **PADMANABHAN & DAWSON PLLC**, 45 South Seventh Street, Suite 2315, Minneapolis, MN 55402, for plaintiff.

Marla Butler and Jonathan Nussbaum, **THOMPSON HINE LLP**, 3560 Lenox Road Northeast, Suite 1600, Atlanta, GA 30326; Steven A. Block, **THOMPSON HINE LLP**, 20 North Clark Street, Suite 800, Chicago, IL 60602; Jamar T. King, **THOMPSON HINE LLP**, 10050 Innovation Drive, Suite 400, Miamisburg, OH 45342; and Jeffrey R. Moore, **THOMPSON HINE LLP**, 3900 Key Center, 127 Public Square, Cleveland, OH 45342, for defendant.

In 2011, Steady State Imaging, LLC ("Steady State") and General Electric Company ("GE") entered into a contract regarding SWIFT technology, a magnetic resonance imaging technique developed by Steady State. *Steady State Imaging, LLC v. Gen. Elec. Co.*, No. 17-1048, 2019 WL 1491934, at *1 (D. Minn. Apr. 4, 2019). Steady State brought this action in April 2017, alleging two counts of breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. *Id.* The Court dismissed

Steady State's breach of good faith and fair dealing claim in January 2018 and, in April 2019, granted summary judgment for GE on the first breach of contract claim, after finding that the Asset Purchase Agreement (the "APA") entered into by the parties did not obligate GE to commercialize SWIFT technology. *Id.* at *1, 7.

There are, therefore, two remaining counts to be tried—Count III (breach of contract) and Count IV (promissory estoppel)—which involve either alleged oral offers or promises made by GE to Steady State to commercialize SWIFT independent of the APA. *Steady State*, 2019 WL 1491934, at *7–9. The parties have brought Motions in Limine in advance of trial to resolve a number of evidentiary disputes, which the Court will now address.

## DISCUSSION

### I. STEADY STATE'S MOTIONS IN LIMINE

#### A. Exclude References to the Court's Dismissal of Counts I and II (MIL #1)

Steady State seeks to preclude GE from introducing evidence concerning the Court's dismissal of Counts I and II of the Amended Complaint, arguing that such evidence is irrelevant, likely to cause unfair prejudice, and likely to mislead the jury. The Court agrees and, thus, will not admit the earlier rulings as evidence, nor will it instruct the jury of the Court's rulings with respect to Counts I and II. Accordingly, the Court will grant this Motion.

However, the Court recognizes that it is important for the jury to understand that GE had no obligation to commercialize SWIFT technology under the APA, and will allow an instruction to the jury to accomplish this. The parties are instructed to meet and confer regarding such an instruction, which they will then propose for the Court's consideration.

**B. Exclude Evidence Inconsistent with the Court's Finding that the Integration Clause of the APA Did Not Preclude the Parties from Orally Modifying the APA (MIL #2)**

Steady State argues that GE should not be permitted to make arguments or introduce evidence contradicting the Court's earlier finding that, under Minnesota law, a written contract can be orally modified even if the contract prohibits such modifications. Steady State asserts that any such evidence is irrelevant and would be misleading.

GE argues that it is not seeking to relitigate whether post-APA promises are legally invalid; instead, it seeks to introduce evidence of the parties' beliefs concerning the validity of any post-APA promises or oral offers. GE asserts that this is necessary to demonstrate that GE could not have assented to any alleged oral contract, and that Steady State could not have reasonably relied on any promises.

The Court finds that the state of mind of witnesses who were aware of the Integration Clause is relevant, both in terms of GE's intent to be bound and the reasonableness of Steady State's reliance. Furthermore, Steady State can mount an effective attack on GE's arguments at trial by questioning the credibility of witnesses' beliefs, or by demonstrating that Steady State relied on GE's promises or oral offers to

commercialize SWIFT irrespective of any belief related to the Integration Clause. Accordingly, the Court will deny this Motion. However, the Court notes that if GE strays too far towards suggesting that the Integration Clause, itself, bars Steady State's claims, then the Court will consider instructing the jury of its earlier finding.

### C. Order that Certain Emails and Documents Do Not Constitute Hearsay (MIL #3)

Steady State asks the Court (1) to rule that all documents produced from the files of the parties qualify for the business records hearsay exception and (2) that all documents and emails authored by GE agents and employees constitute party admissions, and (3) to order GE to sort its remaining objections by category (relevance, foundation, authentication, etc.).

The Court will deny this Motion with respect to ordering GE to categorize its objections; however, the Court instructs GE to reexamine whether some of its near-universal objections are no longer merited following the parties' subsequent stipulations and the Court's findings here.

Additionally, the Court prefers to deal with hearsay objections as they arise during trial. Accordingly, the Court will defer ruling on which documents and emails qualify as non-hearsay until the appropriate time.

## II. GE'S MOTIONS IN LIMINE

### A. Limit Steady State to Presenting Only Facts Disclosed in Its Interrogatory Responses (MIL #1)

Steady State has identified three promises to support its oral contract and promissory estoppel claims, and three additional promises to support its promissory estoppel claim. GE asks the Court to limit Steady State's arguments at trial to these specific promises and to any facts expressly set forth in its interrogatory responses. The Court will deny this Motion, as the Court can address and rule on objections as they are offered at trial.

### B. Limit Steady State to Presenting Evidence Only of the Two Forms of Consideration Disclosed in Discovery (MIL #2)

Though the Motion's title suggests limiting Steady State to forms of consideration disclosed during discovery, GE actually asks that Steady State be limited to arguing or presenting evidence of forms of consideration that Steady State explicitly identified in its interrogatory responses. The Court will deny this Motion, as Rule of Civil Procedure 26(e) allows for the introduction of facts already made known to the party through other forms of discovery, and the Court can rule on objections as they come up at trial.

### C. Bar Steady State from Presenting Evidence of Reliance Damages (MIL #3)

Steady State avers that it intends to seek only expectation damages. Accordingly, the Court will deny this Motion as moot.

### D. Preclude Steady State from Arguing or Presenting Evidence that GE Acquired SWIFT to Deny It to Competitors (MIL #4)

GE argues that its motivations for entering into the APA, which may have included keeping SWIFT out of its competitors' hands, are irrelevant with respect the post-APA

promises or oral contracts at issue here.  As such, GE maintains that Steady State only seeks to introduce such evidence to paint GE in a bad light with the jury.

Steady State asserts that it does not intend to cast GE in a bad light.  Rather, Steady State maintains that such evidence helps to demonstrate a form of contractual consideration, and is relevant regarding why GE might have promised or agreed to commercialize SWIFT, why GE might have been comfortable developing an alternative technology in lieu of SWIFT, and how GE might have realized value from SWIFT.

The Court agrees that evidence indicating that GE was motivated to keep SWIFT out of its competitors' hand is relevant.  Further, the probative value of any such evidence is not substantially outweighed by the danger of causing unfair prejudice, especially as any resulting prejudice can be cured by direct or cross examination or via objection at trial.  Accordingly, the Court will deny this Motion.  However, the Court does caution Steady State that the focus of any inquiry into GE's motivations should be directed towards the post-APA promises or agreements and not towards why GE may have entered into the APA.

### E. Preclude Steady State from Arguing or Presenting Evidence Regarding the Size, Wealth, or Revenue of GE (MIL #5)

GE argues that, under Minnesota law, evidence of a defendant's financial condition is inadmissible.  To be sure, Minnesota law disallows consideration of a defendant's financial condition when deciding compensatory damages.  *See* Minn. Stat. § 549.20, subd. 4.

GE also notes that courts generally instruct juries that parties are to be considered of equal standing and equal worth, so allowing Steady State to reference GE's much larger size and wealth would unfairly prejudice it. The Court agrees that such a jury instruction would be appropriate and finds that this instruction will cure much of the prejudice, if any, that GE may suffer from evidence concerning its size, wealth, or revenue.

The Court further finds that size and wealth evidence is relevant with respect to establishing whether GE had the financial resources to commercialize SWIFT, which is what Steady State argues it intends to show. Accordingly, the Court will deny this Motion. However, the Court cautions Steady State against spending too much time on GE's size, wealth or revenue, as the jury does not need to be told again and again, and against referencing GE's financial resources except with respect to its ability to commercialize SWIFT.

### F. Preclude Steady State from Presenting Evidence Regarding Its Siemens "Opportunity Cost" Damages Theory (MIL #6)

GE asserts that Steady State should not be allowed to claim lost opportunity costs based upon a contract with Siemens that Steady State might have entered into had it not executed the APA with GE instead, as the Court already found that the Siemens contract, like the APA, did not require Siemens to commercialize SWIFT, so any claim to lost opportunity damages is speculative. The Court agrees and, accordingly, will grant this Motion to the extent that GE asks that Steady State be barred from presenting the speculative royalty payments from Siemens to establish or corroborate damages flowing

from the alleged post-APA offers or promises. However, the Court notes that testimony regarding Siemens' offer to acquire SWIFT is not necessarily barred altogether, as it may be relevant to rebut a claim that SWIFT lacked value. Objections related to eliciting testimony for this purpose can be raised at trial.

### G. Preclude Steady State from Arguing or Presenting Evidence that GE Did Not Create an ATD Program under the APA or that GE Breached the APA (MIL # 7)

GE argues that Steady State should be precluded from relitigating whether GE breached the APA, including any obligation to create an ATD Program, as the Court already found that Steady State's APA breach of contract claim failed as a matter of law. Steady State maintains that the Court did not reach the issue of whether GE breached the contract by failing to create a SWIFT ATD Program, for the Court dismissed the claim on the grounds that damages were too speculative. Steady State also asserts that, if it cannot present evidence that GE failed to create an ATD program, then its evidence of consideration—that it would refrain from taking any action to enforce the APA—would appear nonsensical to the jury. Thus, Steady State argues that it should be able to argue that GE was in breach and knew that it was in breach.

Steady State is correct that the Court did not reach the question of whether GE was in breach, but necessarily, then, neither did the Court find that GE was in breach, as Steady State asserts here. Instead, the Court found that, "with respect to GE's obligation to create and/or complete the SWIFT ATD Program, the APA is ambiguous." *Steady State*, 2019 WL 1491934, at *5. Because "construction of an ambiguous contract becomes a

-8-

CASE 0:17-cv-01048-JRT-KMM   Doc. 536   Filed 02/23/21   Page 9 of 13

fact question for the jury," *Amer. S.S. Co. v. Hallet Dock Co.*, 862 F. Supp. 2d 919, 944 (D. Minn. 2012), to resolve any question concerning whether GE had, in fact, breached the APA by failing to create an ATD Program, the jury would have to take a significant detour into the world of the APA. As the APA is not at issue here, any such detour would offer little probative value and be of little consequence in determining the action.

Further, assuming any probative value could be realized by detouring away from the alleged post-APA offers and promises actually at issue, it would be substantially outweighed by the danger of wasting time, confusing the issues, and misleading the jury. Accordingly, the Court will grant this Motion, while noting that if Steady State can show during trial that such evidence has become relevant for the purpose of rebutting an assertion that it did not forego legal action as a form of consideration based upon the parties' belief that a breach had occurred, then the Court will reconsider.

### H. Preclude Steady State from Presenting Evidence on Prejudgment Interest (MIL #8)

Steady State avers that it does not intend to argue or present such evidence to the jury. Accordingly, the Court will deny this Motion as moot.

### I. Preclude Steady State from Presenting Evidence that GE Did Not Produce Sufficient Damages Data (MIL #9)

Steady State avers that it does not intend to present any testimony to the jury with respect to this issue. Accordingly, the Court will grant this Motion as moot.

-9-

**J. Preclude Dr. Garwood from Offering Irrelevant Out-Of-Court Statements from Third Parties (MIL # 10)**

An expert witness for Steady State, Dr. Michael Garwood, invented SWIFT and co-founded Steady State, and he is expected to testify to SWIFT's advantages over other techniques, as well as the RUFIS technology that GE adopted instead of SWIFT, based upon statements made by third-party caregivers indicating that they wished SWIFT was available in the market. GE contends that the statements constitute hearsay, as they are out-of-court statements made for the truth of the matter asserted. Further, while Rule of Evidence 703 allows an expert opinion to be based on inadmissible facts and data, GE maintains that such facts and data must be of the kind reasonably relied upon by experts in the field, which these statements are not.

The Court agrees on both accounts and, thus, finds that the statements are inadmissible hearsay. Accordingly, the Court will grant this Motion, while noting that if Steady State can show during trial that such evidence has become relevant for rebutting an assertion that demand for SWIFT did not exist in the market after GE released its RUFIS technology, the Court will reconsider the matter.

**K. Bar Steady State from Presenting Evidence of Damages Based on Early Forward-Looking Projections of Sales of SWIFT by GE (MIL # 12)[1]**

---

[1] As disclosed at the motion hearing, GE has withdrawn it eleventh Motion in Limine, which accounts for the skip in numbering.

GE argues that Steady State should be precluded from introducing exhibits and deposition designations concerning GE's early projections of SWIFT sales because the projections were not used by either party to calculate damages. GE acknowledges that projections made after GE's acquisition of SWIFT were included in the report of Don Gorowsky, Steady State's damages expert, for background information; however, GE asserts that these projections formed no part of Gorwsky's methodology or calculation of damages.

Steady State contends that, while Gorowsky did not use GE's projections to calculate damages, he did cite to GE's 2011 projections to highlight the reasonableness of his own calculations. Additionally, irrespective of the damages question, Steady State argues that the projections are important evidence to provide relevant background information with respect to the parties' negotiations, as GE provided them to Steady State, and Steady State then considered them when deciding to enter into a contract with GE.

The Court will deny the Motion, as the sales projections are relevant for the purpose of rebutting any challenge by GE to the reasonableness of Steady State's calculation of damages, which is also why they were cited in Gorowsky's report. However, the sales projections cannot be used for calculating damages, and Steady State is cautioned that the projections' relevance wanes considerably if they are only of

consequence to the parties' APA negotiations, but of little consequence with respect to post-APA negotiations or promises.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Omnibus Motion in Limine [Docket No. 499] is **DENIED in part** and **GRANTED in part** as follows:

    a. The Court **GRANTS** Motion in Limine #1. The parties are to meet and confer, then propose an instruction to inform the jury that GE had no obligation to commercialize SWIFT technology under the APA.

    b. The Court **DENIES** Motion in Limine #2.

    c. The Court **DENIES** Motion in Limine #3 as to ordering GE to categorize its objections and **DEFERS** ruling on which documents and emails qualify as non-hearsay until the appropriate time arises at trial.

2. Defendant's Omnibus Motion in Limine [Docket Nos. 483 and 491] is **DENIED in part** and **GRANTED in part** as follows:

    a. The Court **DENIES** Motion in Limine #1.

    b. The Court **DENIES** Motion in Limine #2.

    c. The Court **DENIES as moot** Motion in Limine #3.

    d. The Court **DENIES** Motion in Limine #4, while noting that focus should only be centered on motivations related to post-APA offers and promises.

    e. The Court **DENIES** Motion in Limine #5, while noting that Steady State should not spend more time than necessary to argue that GE had sufficient

    financial resources to commercialize SWIFT based upon its size, wealth, and revenue.

  f.  The Court **GRANTS** Motion in Limine #6 to the extent that this evidence is offered to calculate or corroborate damages.

  g.  The Court **GRANTS** Motion in Limine #7.  However, if Steady State can show that the evidence has become relevant at trial to rebut an assertion that it did not forego litigation as a form of consideration, the Court will reconsider.

  h.  The Court **DENIES as moot** Motion in Limine #8.

  i.  The Court **DENIES as moot** Motion in Limine #9.

  j.  The Court **GRANTS** Motion in Limine #10.  However, if Steady State can show that the evidence has become relevant at trial to rebut an assertion that there was no demand for SWIFT, the Court will reconsider.

  k.  The Court **DENIES** Motion in Limine #12, but this evidence cannot be used to calculate damages.

DATED: February 23, 2021　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
at Minneapolis, Minnesota.　　　　　　　　　　　　JOHN R. TUNHEIM
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　　　　　　　　United States District Court