**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

STEADY STATE IMAGING, LLC,                    Civil No. 17-1048 (JRT/TNL)

           Plaintiff,

v.                                                              **MEMORANDUM OPINION AND**
                                                                **ORDER ON POST-TRIAL**
                                                                **MOTIONS**

GENERAL ELECTRIC COMPANY,

           Defendant.

Britta S. Loftus, Devan V. Padmanabhan, Michelle E. Dawson, and Paul J. Robbennolt, **PADMANABHAN & DAWSON, PLLC**, 45 South Seventh Street, Suite 2315, Minneapolis, MN 55402, for plaintiff.

Jamar T. King, **THOMPSON HINE LLP**, 10050 Innovation Drive, Suite 400, Miamisburg, OH 45342; Jeffrey R. Moore, **THOMPSON HINE LLP**, 3900 Key Center, 127 Public Square, Cleveland, OH 44114; Jonathan Nussbaum and Marla Butler, **THOMPSON HINE LLP**, 3560 Lenox Road Northeast, Suite 1600, Atlanta, GA 30326; Steven A. Block, **THOMPSON HINE LLP**, 20 North Clark Street, Suite 800, Chicago, IL 60602, for defendant.

This case arose out of a contract dispute under an exclusive asset purchase agreement ("APA") between Plaintiff Steady State Imaging, LLC ("Steady State") and Defendant General Electric Company ("GE"). Steady State alleged that GE failed to meet its obligations under the APA when it abandoned its efforts to study a product called SWIFT to focus on a similar technology known as RUFIS. Steady State also alleged that GE made multiple promises to commercialize SWIFT after execution of the APA, which it also

failed to fulfill.  Steady State brought this action in May 2017, alleging three claims of breach of contract, breach of the covenant of good faith and fair dealing, and promissory estoppel.  This Court dismissed Steady State's breach of the covenant of good faith and fair dealing claim leaving Steady State's breach of an oral contract and promissory estoppel claims.

These claims proceeded to a jury trial.  Following a jury verdict awarding $10 million in damages to Steady State for its promissory estoppel claim, the Court determined as a matter of law that GE's promises to Steady State must be enforced to prevent injustice and entered judgment for Steady State against GE.  Presently before the Court are three motions: (1) GE's motion for renewed judgment as a matter of law, (2) GE's motion to stay execution of judgment pending the disposition of its post-trial motions and appeal, and (3) Steady State's motion pursuant to Fed. R. Civ. P. 59(e) to alter/amend/correct the judgment to include pre-judgment and post-judgment interest.

Because the evidence was sufficient to show that GE made an enforceable promise to Steady State to commercialize SWIFT, and Steady State reasonably relied on that promise to its detriment, the Court will deny GE's motion for judgment as a matter of law. The Court will grant in part Steady State's motion for prejudgment and postjudgment interest. Finally, the Court will grant GE's motion to stay execution of the judgment provided GE posts a supersedeas bond in the amount of $10 million.

**BACKGROUND**

The facts of this litigation have been thoroughly addressed in prior rulings, which are incorporated by reference and briefly summarized below. *See Steady State Imaging, LLC v. Gen. Elec. Co.*, No. 17-1048, 2019 WL 1491934 (D. Minn. Apr. 4, 2019). In 2011, Steady State and GE entered into an Asset Purchase Agreement ("APA") regarding the commercialization of SWIFT technology, a magnetic resonance imaging technique developed by Dr. Michael Garwood and to which Steady State had a right to license. *Id.* at *1.

Under the APA, GE agreed to create an Advanced Technological Development ("ATD") Program—a research and development program intended to test and evaluate the technology for commercialization—with respect to the SWIFT technology. *Id.* at *2. Upon completion of the ATD Program, the APA required GE to create a New Product Introduction ("NPI") Program to implement SWIFT on commercial MRI scanners if it determined "in its sole discretion that an NPI Program is appropriate for any product using the SWIFT technology." *Id.* If GE decided to commercialize SWIFT following completion of an ATD program, the APA required it to make royalty payments to SSI for each sale. *Id.* Finally, the APA required amendments, modifications, and supplements to be in a signed writing. *Id.*

After execution of the APA in April 2011, GE initiated plans for the SWIFT ATP Program. *Id.* However, by June 2011, GE began comparing SWIFT with another MRI technology known as RUFIS. *Id.* The following month, the ATD Program team began to

express concern with the results of the comparison, with one team member indicating that SWIFT's results as compared to RUFIS were "very very concerning." *Id.*  As such, Jason Polzin, GE's Chief Engineer for Global MR, predicted "slow[ing] down the effort on SWIFT." *Id.*  Steady State alleges that GE made false representations to Steady State about the progress on the SWIFT ATD.  (Compl. ¶¶ 33–34, Apr. 4, 2014, Docket No. 1.)  Over the next few years, Steady State asserts that GE made multiple oral representations about their intention to commercialize SWIFT.  (Am. Compl. ¶¶ 27–40, May 19, 2017, Docket No. 22.)  Ultimately, SWIFT was never commercialized by GE.

Steady State brought this action in April 2017 asserting four claims: (I) Breach of Contract- Asset Purchase Agreement; (II) Breach of Implied Covenant of Good Faith and Fair Dealing; (III) Breach of Contract- Post-APA Agreement to Commercialize SWIFT Technology; and (IV) Promissory Estoppel.  (*See* Compl. ¶¶ 37–58.)  In May 2017, Steady State filed an Amended Complaint, which made additional factual allegations but maintained the same four claims asserted in the original Complaint.  (*See generally* Am. Compl.)  The Court dismissed Count II of the Complaint and granted summary judgment for GE on Count I.  *See Steady State Imaging,* 2019 WL 1491934 at *7–9.

Steady State's remaining oral contract and promissory estoppel claims (Counts III and IV) proceeded to a jury trial in April 2022.  *See Steady State Imaging, LLC v. Gen. Elec. Co.,* No. 17-1048, 2022 WL 3084632, at *2 (D. Minn. Aug. 3, 2022).  At trial, Steady State presented evidence that circumstances had changed since the negotiation of the APA

because GE had launched quiet imaging with RUFIS. *Id.* at *2. Additionally, there was evidence on the record that the threat by Steady State of legal action led GE to take on additional obligations, which supported the conclusion that it was reasonable for Steady State to believe its threat had its intended effect of propelling GE into action. *Id.*

Steady State further presented evidence of oral promises to commercialize SWIFT after the APA was finalized. (Trial Tr. 1161:14–1163:6; 1526:22–1528:11.) First, Steady State described assurances GE made at the 2011 Radiology Society of North America ("RSNA") conference. (Trial Tr. 267:21–268:7; 268:16–270:4; 1425:1–1425:16.) Second, Steady State described a conversation with GE at the 2013 International Society for Magnetic Resonance in Medicine ("ISMRM"), where GE employees were assured "not to worry" about SWIFT commercialization. (Trial Tr. 283:3–283:16; 1450:21–1450:25; 654:8–656:9.) Third, Steady State claimed that on August 29, 2014, GE and Steady State had a meeting at which agents of Steady State threatened to sue GE for failing to commercialize SWIFT unless a definitive timeline was provided for SWIFT commercialization. (Trial Tr. 323:15–323:24.) Steady State further alleged that after this conversation, GE told Steady State that it had internally agreed to "put money into SWIFT." (Trial Tr. 1481:8–1481:16.)

During the trial, GE moved for judgment as a matter of law pursuant to Fed. R. P. 50(a). (Def's Mem. Supp. Mot. J. Matter of L., Apr. 19, 2022, Docket No. 567.) GE argued that the evidence presented by Steady State was inadequate to allow a reasonable jury

to conclude that after entering the written APA, that GE made oral promises to commercialize SWIFT that are enforceable under either the law of contract or the equitable doctrine of promissory estoppel. (*Id.* at 24–25.) The Court denied GE's motion twice from the bench in open court. (Trial Tr. at 1824:22–1826:6; 2417:20-21.)

On April 27, 2022, the jury rendered a verdict finding that Steady State had proved all the elements of promissory estoppel by a preponderance of the evidence. *Steady State Imaging*, 2022 WL 3084632 at *2. "Specifically, the jury found that (1) GE made a clear and definite promise to commercialize SWIFT technology in a Silent Brain application; (2) GE intended to induce Steady State to rely on the promise; (3) Steady State reasonably relied on the promise; and (4) Steady State had losses or was disadvantaged because it relied on GE's promise." *Id.* at *1. The jury found that the promise could be fully performed within one year and thus awarded Steady State damages of $10 million. *Id.*

The Court then determined as a matter of law, that the promise between GE and Steady State should be enforced to prevent injustice. *Id.* The Court found that GE made an enforceable promise to Steady State, which Steady State reasonably relied upon to its detriment. *Id.* at *4–5. As such, the Court held that the third element of promissory estoppel was met as a matter of law and entered a judgment against GE in the amount of $10 million. *Id.* at *6.

Following entry of the judgment, GE filed a renewed motion for judgment as a matter of law, the motion currently at issue. (Def. Mot. for J. Matter of L. (Renewed),

Sept. 1, 2022, Docket No. 620.)  GE argues that the promissory estoppel claim is barred by the existence of an express, written contract, and in any event, that Steady State failed to present evidence sufficient to support all the elements of a promissory estoppel claim. (*See generally* Def's Mem. Supp. Renewed Mot. J. Matter of L., Sept. 1, 2022, Docket No. 621.)  To support their claim, GE argues that the purported assurances, which were the basis for the finding of a promissory estoppel claim, were informal phone calls and did not meet the "clear and definite promise" standard.  (*Id.* at 10–11.)  Additionally, GE alleges that the existence of the APA bars the application of promissory estoppel and that any reliance by Steady State on GE was unreasonable.  (*Id.* at 11–13.)

Second, GE moves pursuant to Fed. R. Civ. P. 62(b) for an order staying execution of the judgment pending disposition of GE's renewed motion for judgment as a matter of law, and if necessary, appeal of the judgment.  (Def.'s Mot. Stay Exec. of J. at 1, Sept. 2, 2022, Docket No. 628.)  GE further requests approval of a supersedeas bond in the amount of $10 million.  (*Id.*)

Finally, Steady State moves pursuant to Fed. R. Civ. P. 59(e) to amend the judgment to include pre-judgment interest pursuant to Minn. Stat. § 549.09 and post-judgment interest pursuant to U.S.C. § 1961.  (Pl.'s Mot. Am. J. , Sept. 1, 2022, Docket No. 622.) Steady State requests pre-judgment interest in the amount of $5,410,959, and post-judgment interest in the amount of $1,270.88 per day from August 4, 2022, through the date of satisfaction of the judgment, such post-judgment interest to be compounded

annually and calculated at the time of satisfaction of the judgment.  (Pl.'s Mem. Supp.

Mot. Am. J., Sept. 1, 2022, Docket No. 624.)

**ANALYSIS**

## I.   DEFENDANT'S MOTION FOR RENEWED JUDGMENT AS A MATTER OF LAW

### A.  Standard of Review

Rule 50(a)(1) of the Federal Rules of Civil Procedure provides that the Court may

resolve an issue as a matter of law if "a party has been fully heard on an issue during a

jury trial" and "a reasonable jury would not have a legally sufficient evidentiary basis to

find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "A motion for judgment as a

matter of law should be granted when all the evidence points one way and is susceptible

of no reasonable inferences sustaining the position of the nonmoving party." *Hunt ex rel.*

*Hunt v. Lincoln Cnty. Mem'l Hosp.*, 317 F.3d 891, 893 (8th Cir. 2003) (quotation omitted).

If the Court does not grant a motion for judgment as a matter of law during trial

pursuant to Rule 50(a), the moving party may file a renewed motion regarding legal

questions following the verdict and entry of judgment pursuant to Rule 50(b).  Fed. R. Civ.

P. 50(b). In deciding a renewed motion, the Court shall:

> (1) resolve direct factual conflicts in favor of the nonmovant, (2) assume as
> true all facts supporting the nonmovant which the evidence tended to
> prove, (3) give the nonmovant the benefit of all reasonable inferences, and
> (4) deny the motion if the evidence so viewed would allow reasonable jurors
> to differ as to the conclusions that could be drawn.

*Stults v. Am. Pop Corn Co.*, 815 F.3d 409, 418 (8ᵗʰ Cir. 2016) (quoting *Jones v. Edwards*, 770 F.2d 739, 740 (8ᵗʰ Cir.1985)).  Because a Rule 50(b) motion constitutes a renewal of a Rule 50(a) motion made at the close of the evidence, a Rule 50(b) motion is limited to the issues raised in the Rule 50(a) motion.  *Hinz v. Neuroscience, Inc.*, 538 F.3d 979, 983–84 (8ᵗʰ Cir. 2008).

### B. Analysis

Promissory estoppel is an equitable remedy that implies "a contract in law where none exists in fact."  *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn. 1981) (citation omitted).  The elements of promissory estoppel are: (1) a clear and definite promise; (2) the promisor intended to induce reliance and the promisee so relied; and (3) the promise must be enforced to prevent injustice.  *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000).  The promisee's reliance must be reasonable such that the promisee was not aware of the possibility that the promise would not occur and relied only to a reasonable degree.  *Meriweather Minn. Land & Timber, LLC v. State*, 818 N.W.2d 557, 567 (Minn. App 2012).  The Court may consider factors "such as the reasonableness of the promisee's reliance," the "'definite and substantial character' of the promise in relation to the remedy sought," the formality of how the promise was made, and public policy factors.  *Faimon v. Winona State Univ.*, 540 N.W.2d 879, 883 n.2 (Minn. Ct. App. 1995)).

GE contends that no reasonable juror would have a legally sufficient basis to find for Steady State because (1) promissory estoppel is barred by the existence of the APA

and (2) in any event, Steady State failed to present sufficient evidence to satisfy the elements of promissory estoppel.  Specifically, GE asserts that the APA was an express contract between GE and Steady State, an undisputed fact, and that the evidence firmly establishes all of the purported oral promises concern the same subject matter as the APA.  Moreover, GE claims that any reliance by Steady State on the alleged oral promises was unreasonable because the promises expressly contradict the written APA and thus the APA's existence precludes enforcement of the alleged oral promises.  Additionally, GE argues that Steady State cannot demonstrate that GE made a clear and definite promise or that Steady State actually relied on any of the alleged post-APA oral promises to its detriment.

The Court has addressed all of GE's arguments in GE's previous motion for judgment as a matter of law in court and in the subsequent order granting judgment for Steady State.  Specifically, with regard to GE's arguments that the oral promises were contradictory to the written language in the APA, and that Steady State's reliance was thus unreasonable, the APA did not state that GE would never commercialize SWIFT, but only stated that GE had sole discretion to decide whether to commercialize the technology.  *Steady State Imaging*, 2022 WL 3084632 at *2.  The "reliance on an oral representation was unjustifiable as a matter of law **only if** the written contract provision explicitly stated a fact **completely contradictory** to the [statement]."  *Johnson Bldg. Co. v. River Bluff Dev. Co.*, 374 N.W.2d 187, 194 (Minn. Ct. App. 1985) (emphasis added).  Thus,

since the contract provision was not completely contradictory to the promises to commercialize SWIFT, the jury's determination that Steady State's reliance on GE's promises to commercialize was reasonable. *Steady State Imaging*, 2022 WL 3084632 at *2. GE's argument that the APA did not grant it sole discretion, but rather gave GE "no obligation to pursue commercialization," is merely an effort to parse words, given that the APA did in fact require GE to create a NPI to implement SWIFT if it determined "in its sole discretion that an NPI Program is appropriate for any product using the SWIFT technology." *Steady State Imaging*, 2019 WL 1491934 at *2. GE's renewed argument does not change the Court's decision.

As to whether Steady State can demonstrate that GE made a clear and definite promise, the Court found that all of the promises made, though some were not communicated in formal settings, were of a definite and substantial nature. *Steady State Imaging*, 2022 WL 3084632 at *3. The Court pointed to evidence presented at trial establishing that at RSNA 2011, GE told Steady State "don't worry . . . we're going to follow with SWIFT . . . we're committed, you know, we're going to launch a SWIFT product." *Id.* (quoting Trial Tr. at 1425:1–16; 271:4–8.) The Court found that this constitutes a definite promise to launch (i.e. commercialize) a SWIFT product and this promise was substantial in that it would result in significant revenue streams for Steady State. *Id.*

Further, the Court determined that while the promises at ISMRM 2013 were certainly less definite and substantial than the ones made at RSNA 2011, they were still

11

sufficient.  The Court found that the Steady State witnesses all testified that they believed the statements that GE communicated it was "moving forward with SWIFT," that Steady State would "make a lot of money" and that there was "no need to worry" about the commercialization of SWIFT were made to indicate that GE was going to commercialize SWIFT.  *Id.* (quoting Trial Tr. at 298:15–299:1; 1454:3–7; 655:19–656:3.)   The Court determined that although out of context the promises may appear indefinite, as it was unclear to what the statements referred, context showed that the statements were made in regard to the commercialization of SWIFT.  For example, Coumans' statement to Garwood that he need not worry was in response to Garwood expressing his concern that GE would not move forward with SWIFT. *Id.* (citing Trial Tr. at 655:14–19.) Given the context, the Court found that the promises become more definite and were substantial. *Id.*

Lastly, the Court made clear that the September 2014 promise by GE to continue moving forward with SWIFT was definite and substantial.  The Court found that the September 2014 promise was very significant in the parties' ongoing relationship because GE made the promise in response to Steady State's frustration that SWIFT had yet to be commercialized and threat to take legal action.  *Id.* at *4.  Moreover, it was made in a formal setting.  *Id.*  GE argues that this threat of legal action is not evidence of reasonable reliance.  However, even if true, the weight of the evidence still supports reasonable reliance because all the other promises were of a definite and substantial nature showing

that GE promised to commercialize SWIFT and such action would provide Steady State significant revenue.

In sum, the Court finds no reason to depart from its earlier findings regarding GE's arguments. As the Court has previously made clear, "GE made clear and definite promises with the intent to induce Steady State's reliance on those promises and in the hopes that Steady State would forego legal action. Steady State did reasonably rely on those promises, and Steady State was damaged as a result." *Steady State Imaging*, 2022 WL 3084632 at *5. GE has therefore failed to show that it is entitled to judgment as a matter of law on Steady State's promissory estoppel claim, and the Court will deny the Rule 50(b) Motion.

## II. PLAINTIFF'S MOTION TO AMEND JUDGMENT TO INCLUDE PREJUDGMENT AND POSTJUDGMENT INTEREST

The Court next considers Steady State's motion to amend judgment to include prejudgment and postjudgment interest, because the outcome of this motion impacts the parties' dispute over the supersedeas bond in GE's motion to stay execution of judgment.

### A. Prejudgment Interest

In a diversity action, Minnesota law governs Plaintiff's request for prejudgment interest. *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 864 (8th Cir. 2011). Section 549.09, subdivision 1(a), provides for the accrual of interest "from the time of the verdict . . . until judgment is finally entered[.]" Minn. Stat. § 549.09, subd. 1(a). "Subdivision 2 creates a judgment creditor remedy and provides that '[d]uring each calendar year,

interest shall accrue on the unpaid balance of the judgment or award from the time that it is entered or made until it is paid, at the annual rate provided in subdivision 1.'" *Alby v. BNSF Railway Co.*, 934 N.W.2d 831, 833 (citing Minn. Stat. § 549.09, subd. 2 (2018)). Where the judgment or award exceeds $50,000, subject to certain exceptions that are inapplicable here, "the interest rate shall be ten percent per year until paid." *Id.* (citing Minn. Stat. 549.09, subd. 1(c)(2) (2018)).

In Minnesota, prejudgment interest on liquidated or sum-certain claims can be awarded from the date the claims first arose. *ICC Leasing Corp. v. Midwestern Mach. Co.,* 257 N.W.2d 551, 556 (Minn. 1977) ("[W]here a claim is unliquidated but is readily ascertainable by computation or by reference to generally recognized objective standards of measurement, interest should be allowed the same as for a liquidated claim."). Where the damages are not liquidated and not readily ascertainable, Minnesota law requires that prejudgment "interest on pecuniary damages shall be computed . . . from the time of the commencement of the action [ ] or the time of a written notice of claim, whichever occurs first." Minn. Stat. § 549.09, subd. 1(b). The statute clearly dictates that the prevailing party "shall receive interest" on any award, with few limited exceptions. *Id.*

Steady State argues that it is entitled to prejudgment interest in the amount of $5,410,959, consisting of $5 million in preverdict interest and $410,959 in postverdict, prejudgment interest.

### 1.  Preverdict Interest

The Minnesota Supreme Court has recognized that preverdict interest is "an element of damages awarded to provide full compensation by converting time-of-demand . . . damages into time-of-verdict damages." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 401 F.3d 901, 918 (8th Cir. 2005) (citing *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn. 1988)).  It is designed to "compensate the plaintiff for the loss of the use of money occasioned by the defendant's conduct." *Poehler v. Cincinnati Ins. Co.*, 899 N.W.2d 135, 150 (Minn. 2017).

The parties dispute whether Steady State is entitled to any preverdict-prejudgment interest at all.  Steady State argues that it is entitled to $5 million in preverdict interest because it did not serve GE with a written notice of its claim and thus the interest is properly calculated from the time of commencement of the action on April 4, 2017.  (Pl.'s Mem. Supp. Mot. Am. J at 4.)  Steady State arrives at that number by reasoning that it is owed 10 percent interest annually on the entire jury award of $10 million, through April 3, 2022, the date of GE's verbal offer.  (*Id.*)  Steady State further asserts that the offer-counter provisions do not limit its interest recovery because GE's written counteroffer presented two alternative offers, the latter having an "established value" of $10 million.  (*Id.*)  Further, Steady State asserts that GE's verbal settlement offer of $10 million on the eve of trial superseded the legal effect of any previous written settlement offers, thus the principal to base the interest on is the verbal $10 million offer since it is closer to the actual verdict.

15

GE argues that such interest is not appropriate when the calculation of damages rests in whole or in part on the jury's discretion. (Def.'s Mem. Opp. Mot. Am. J. at 7, Sept. 22, 2022, Docket No. 640.) GE rests its argument on an unpublished Minnesota Court of Appeals case to argue that because the jury used its discretion to get to the $10 million damages award, a figure that was not close to either Steady State's $50 million or GE's $2.8 million damages figures, a grant of prejudgment interest is not appropriate under these circumstances. (*Id.* at 7–9.)

Plainly, under Minnesota law, it is proper to award preverdict interest "irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable." *Simeone v. First Bank Nat'l Ass'n,* 73 F.3d 184, 191 (8th Cir. 1996) (quoting *Lienhard,* 431 N.W.2d at 865). In *Myers v. Hearth Techs., Inc.*, the defendant argued on appeal that the trial court erred in awarding the plaintiffs preverdict interest on the damages award because such "preverdict interest is not proper where the amount of damages was not readily ascertainable before trial or **required substantial jury discretion."** 621 N.W.2d 787, 794 (Minn. Ct. App. 2001) (emphasis added). The Court noted that it "has squarely held that it is proper to award preverdict interest on such damages." *Id.* (citing *Skifstrom v. City of Coon Rapids,* 524 N.W.2d 294, 295–97 (Minn. App. 1994), *review granted* (Minn. Feb. 3, 1995), *review dismissed* (Minn. Oct. 25, 1995).

The *Skifstrom* court specifically rejected the argument that awards of preverdict interest are dependent on the ascertainability of damages. It relied on the Minnesota

Supreme Court's holding in *Lienhard* that a 1984 amendment to section 549.09 eliminated the ascertainability requirement that had applied at common law. *Skifstrom,* 524 N.W.2d at 296 (quoting *Lienhard*, 431 N.W.2d at 865) (holding that section 549.09 was amended to allow preverdict interest irrespective of a defendant's ability to ascertain the amount of damages for which he might be held liable).

In *Lienhard,* the court's discussion of section 549.09 and the ascertainability rule was necessary to its ultimate holding. Because preverdict interest can be awarded even when the amount of such interest cannot be ascertained until fixed by verdict, the Minnesota Supreme Court held that preverdict interest is not "conventional interest," but instead an additional element of compensatory damages subject to a statutory cap on damages awarded against the state. *Lienhard*, 431 N.W.2d at 865–66. *Lienhard* thus considered and decided the question of the continued applicability of the ascertainability rule in a context where the issue was necessary to the holding in the case. The *Myers* court accordingly concluded that because preverdict interest is available "irrespective of a defendant's ability to ascertain the amount of damages," the "post-*Lienhard* cases that apply the ascertainability rule . . . are incorrect." *Myers*, 621 N.W.2d at 794.

Further, the difference between damages that are "not readily ascertainable" and damages that are subject to "jury discretion" under Minnesota law is a distinction without a difference. *See Myers*, 621 N.W.2d at 794 (rejecting defendant's argument that

17

plaintiffs cannot recover such interest as it was subject to jury discretion).[1]  Therefore, the Court finds that Steady State is able to recover preverdict interest.

Although Steady State can recover preverdict interest, the amount Steady State has calculated, however, is incorrect.  The parties agree that because Steady State did not serve GE with a written notice of its claim, the preverdict interest is properly calculated from the time of commencement of the action on April 4, 2017.  Minn. Stat. § 549.09, subd. 1(b).  They disagree, though, on what settlement offer to base that interest and relatedly, how long the interest should run.

Section 549.09, subdivision 1(b) controls prejudgment interest if either party has served a written offer of settlement.  Minn. Stat. § 549.09, subd. 1(b); *see Shimek v. Weinig*, No. 99-2015, 2002 WL 31520370, at *2 (D. Minn. Nov. 12, 2002).  "If either party serves a written offer of settlement, the other party may serve a written acceptance or a written counteroffer within 30 days," and "[s]ubsequent offers and counteroffers supersede the legal effect of earlier offers and counteroffers."  Minn. Stat. § 549.09, subd. 1(b).  Where a losing party has made an offer of settlement that is closer to the judgment

---

[1] *See also Blehr v. Anderson*, 955 N.W.2d 613, 623 (Minn. Ct. App. 2021) (finding that because the amount of respondent's medical-expense damages were dependent on jury discretion, they were not readily ascertainable); *Hogenson v. Hogenson*, 852 N.W.2d 266, 274 (Minn. Ct. App. 2014) (stating that damages are not ascertainable if they depend on "contingencies or jury discretion"); *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 845 F. Supp. 2d 975, 978 (D. Minn. 2012), *aff'd*, 703 F.3d 1104 (8th Cir. 2013) (stating that prior to 1984, Section 549.09 permitted prejudgment interest only where damages were "readily ascertainable," but that the Minnesota legislature amended the statute that year to provide for prejudgment interest "on **any** judgment or award") (quoting *Simeone,* 73 F.3d at 191) (emphasis added).

than the amount of the opposing party's offer, the prevailing party receives interest only on the amount of the settlement offer, or the judgment, whichever is less, and only from the time of the commencement of the action until the time the settlement offer was made.  *Id.*  When judgments are over $50,000, the interest rate is ten percent each year until paid.  Minn. Stat. § 549.09, subd. 1(c)(2).

Prejudgment interest may be awarded from the time the claimant serves the opposing party a written notice of claim only if the action is commenced within two years of the notice.  Minn. Stat. § 549.09, subd. 1(b).  But, an offer will not trigger the offer-counteroffer provision unless it is in writing and offers to dispose completely of the claims between the parties.  *Hodder v. Goodyear Tire & Rubber Co.,* 426 N.W.2d 826, 840 (Minn. 1988) ("Valid offers and counteroffers under section 549.09 must be in writing and must offer, in sufficiently clear and definite terms, to dispose completely the claims between the negotiating parties.").

Steady State argues that GE's verbal $10 million settlement offer supersedes the legal effect of the earlier offers because the statute only expressly requires initial offers be in writing and the lack of the word "written" concerning subsequent offers is dispositive.  However, Steady State's reading ignores the fact that the phrase "earlier offers and counteroffers" is not modified by the word "written."  Contrary to Steady State's strained reading that it would "not make sense to modify 'earlier offers and counteroffers' with the word 'written,' because some earlier offers and counteroffers

may well not be written," the initial use of "written" instead suggests that all subsequent references to offers are of the same kind, i.e., the written kind.  In other words, because the statute makes initial use of written offers and counteroffers, all subsequent references to them would also concern those that are written to suffice.  Thus, GE's $10 million verbal offer is not valid under the statute to supersede the earlier $250,000 written offer.

Steady State argues in the alternative that if the Court holds that "subsequent offers and counteroffers" must be in writing, the operative written settlement offer is GE's offer to return the rights to SWIFT, worth $10 million, to Steady State.  But nothing in the record establishes that the parties understood the worth of those rights to be $10 million at the time of the settlement offer, and further, there is no case law to support that such an implicit understanding would satisfy the statute's written offer requirement. Steady State may well be right that companies will make monetary offers below the value of their nonmonetary offers, but the record before the Court is not sufficient to make that determination.   And even if the Court were the accept this argument, there is not sufficient evidence to determine what the value of relinquishing the rights to SWIFT would actually be.  Considering the requirement that valid offers "must be in writing" and "in sufficiently clear and definite terms," so as to support a policy that settlements are "best accomplished by offers which are straightforward," the Court finds that GE's written

settlement offer was the definite monetary offer of $250,000.  *See Hodder*, 426 N.W.2d

at 840.

Taking the $250,000 April 2019 settlement offer as the principal, the preverdict-

postjudgment interest is $250,000 multiplied by 10% interest per annum from the

commencement of the litigation, April 4, 2017, to the date of the settlement offer, April

23, 2019.  The Court therefore grants Steady State's motion in part and finds the correct

preverdict-prejudgment interest to be $51,369.87.[2]

### 2.  Postverdict-Prejudgment Interest

Steady State also argues that it is entitled to 100 days of postverdict-prejudgment

interest running from the date of the jury's verdict to when the Court entered judgment,

calculating this interest in the amount of $410,959—a result of a $15 million principal

($10 million jury award and $5 million preverdict interest) multiplied by the 10% interest

rate.  (Pl.'s Mem. Supp. Mot. Am. J at 6.)  GE responds that according to *Bastianson v.*

*Forschen*, 202 N.W.2d 667, 668 (Minn. 1972), interest should be calculated from the date

the liability is established by rendition of the verdict.  (Def.'s Mem. Opp. Mot. Am. J. at

15.)  GE argues that the nature of the promissory estoppel claim presents a unique

situation whereby the jury only found on the first two elements on April 27, 2022, and

GE's liability for the claim was not established until the Court found that the third element

---

[2] This sum is calculated by taking the principal of $250,000 and multiplying it by the 10% annual interest rate to get a per year interest of $25,000.  That interest rate divided by 365 days provides a daily interest of $68.49.   Given the timeframe between the April 4, 2017 litigation commencement and the April 23, 2019 GE settlement offer, 2017 had $18,630.14 worth of interest (272 days), 2018 had $25,000 (365 days), and 2019 had $7,739.73 (113 days).

had been satisfied on August 3, 2022.  (*Id.*)  Thus, this postverdict-prejudgment interest, if any, should be limited to the one day between the Court's order on August 3 and when judgment was entered on August 4 for a total of $2,753.80.  (*Id.* at 16.)

In *Bastianson*, the court considered the "sole issue" of whether interest on an award of damages should be calculated from the date of the verdict or from the date of entry of judgment when "a special verdict pursuant to Rule 49.01 is used and in which all combined questions of law and fact are submitted." *Bastianson*, 202 N.W.2d at 668.  The Court held that the question is controlled by Minn. Stat. § 549.09, requiring interest to run from the date of the verdict.  *Id.*  The Court determined that this was so because the statute proscribes that the liability attaches at the rendition of the verdict, even while subsequent proceedings could and did modify the amount of the award.  *Id.* at 668–69.

The same is true here.  While this Court's subsequent post-trial actions can modify the award amount, GE's liability attached when the jury entered its special verdict for a damages award of $10 million because a special verdict "possesses the same binding effect on the issue of liability as does a general verdict" and it has long been held that where a general verdict is returned, "interest on a money award accrues from the time of rendition of the verdict." *Bastianson*, 202 N.W.2d at 668.  Thus, Steady State is entitled to 100 days of postverdict-prejudgment interest.

However, Steady State's calculation of this interest was incorrect because it included its own calculation of $5 million in preverdict-prejudgment interest.  Substituting

the correct calculation of $51,369.87 in preverdict-prejudgment interest, the Court thus grants Steady State's motion in part and finds that Steady State is entitled to $275,379.99 in postverdict-prejudgment interest.

### B. Postjudgment Interest

Federal law controls the issue of postjudgment interest. *Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1435 (8th Cir. 1991). Federal law provides for postjudgment interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Postjudgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* Interest is computed daily to the date of payment and compounded annually. 28 U.S.C. § 1961(b).

The main dispute for this interest was the calculation used. However, at the hearing both parties agreed that the correct interest is 3.01%. Taking this interest rate and applying it to the Court's finding that total money damages including the jury's award and with prejudgment interest is $10,326,749.80, the Court thus grants Steady State's motion in part and finds that the daily postjudgment interest is $851.60 per day until the judgment is satisfied.

III.    **DEFENDANT'S MOTION TO STAY EXECUTION OF JUDGMENT PENDING DISPOSITION OF POST-TRIAL MOTION AND APPEAL AND REQUEST FOR APPROVAL OF BOND AMOUNT**

Pursuant to Rule 62(d) of the Federal Rules of Civil Procedure, an appellant may request and obtain a stay of judgment pending appeal as a matter of right upon posting a supersedeas bond. *New Access Commc'ns LLC v. Qwest Corp.*, 378 F. Supp. 2d 1135, 1138 (D. Minn. 2005). The stay becomes effective when the Court approves of the amount of the bond. "The general rule is for the district court to set a supersedeas bond in the full amount of the judgment plus interests, costs, and damages for delay" prior to issuing the stay. *Adzick v. Unum Life Ins. Co. of Am.*, 2003 WL 21011345 (D. Minn. April 16, 2003) (citation omitted). The Court maintains the discretion, however, to waive the bond requirement and stay enforcement of the judgment without a bond. *See, e.g.*, *Dillon v. Chicago*, 866 F.2d 902, 904 (7th Cir. 1989).

GE has requested a stay pending the disposition of its post-trial motions and appeal and is prepared to obtain and post a supersedeas bond in the amount of $10 million. Steady State consents to the entry of the stay but has requested that the bond be for the full judgment amount, including any amendments. Per the Court's determinations above, this would be an additional $326,749.80 in prejudgment interest and $851.60 per day in postjudgment interest until the judgment is satisfied. The Court finds, however that a $10 million bond is sufficient because the Court is satisfied that GE will have the funds to

pay the ultimate judgment. *Peterson*, 2000 WL 1909806, at *1. The Court therefore grants GE's motion and approves the supersedeas bond amount of $10 million.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Renewed Motion for Judgment as a Matter of Law [Docket No. 620] is **DENIED**;

2. Plaintiff's Motion to Amend Judgment to Include Prejudgment and Postjudgment Interest [Docket No. 622] is **GRANTED in part**, as follows:

   a. GE is ordered to pay preverdict-prejudgment interest in the amount of $51,369.87;

   b. GE is ordered to pay postverdict-prejudgment interest in the amount of $275,379.99; and

   c. GE is ordered to pay postjudgment interest in the amount of $851.60 per day from the date of entry of the money judgment until the judgment is satisfied; and

3. Defendant's Motion to Stay Execution of Judgment Pending Disposition of Post-Trial Motion and Appeal and Request for Approval of Bond Amount [Docket No. 628] is **GRANTED**.

DATED: June 27, 2023
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge